[No. 724-2. Division Two. December 28, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES E. LESNICK, *Appellant*.

*Barry J. Dahl* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow*), for appellant.

*Henry R. Dunn, Prosecuting Attorney*, for respondent.

PEARSON, C.J.—Defendant, Charles E. Lesnick, appeals from a conviction of the crime of possession of gambling devices, a gross misdemeanor. At trial defendant sought suppression of certain punchboards and other gambling paraphernalia as being the product of an unlawful search of his vehicle. The trial court admitted the evidence, holding that the contraband fell into the "plain view" of officers who had detained defendant for investigation. In the opin-

ion of the trial court, the initial stop of the defendant by police, upon information supplied by an anonymous phone caller, was a permissible "investigative detention" within the doctrine of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and its progeny. We reach the opposite conclusion upon this determinative issue, and reverse.

On October 23, 1970, the city of Kelso police department received a phone call, advising that there was in the city a white Ford van, pulling a U-Haul trailer, the driver of which vehicle was attempting to sell "punchboards" in the city. The caller also supplied a license plate number. At no time did this caller identify himself.

Upon receipt of this information, Kelso Police Chief Thorpe advised officers of the department to search the city for the described vehicle. Chief Thorpe and Sergeant Eby participated in this search, and soon located the described van and trailer in a private club parking lot. They drove to within a short distance of the subject vehicle, and observed that its license number was similar to that given by the informer, though some numerals were transposed. The officers parked their car on an adjacent city street and remained to observe the suspect vehicle. Shortly thereafter, the van was driven from the parking lot onto the street. The officers followed the vehicle for a block and a half, then pulled it over with siren and lights. Up to this point the officers observed neither traffic violations nor any other indications of criminal activity on the part of the vehicle's driver.

Upon stopping, defendant alighted from the van, walked toward the police car, and met Chief Thorpe and Sergeant Eby near the rear of the van. Chief Thorpe identified himself and requested identification papers from defendant, who produced a driver's license. The chief handed the license to Eby, walked to the front of the van to check the license plate, and observed gambling paraphernalia through the driver's window. Defendant was then placed under arrest for possession of gambling devices. (RCW 9.47.030,

repealed Laws of 1971, 1st Ex. Sess., ch. 280, § 23.) His vehicle was towed to the police station and searched pursuant to a warrant. A large number of gambling devices, plus certain merchandise, was seized.

■ Defendant contends that his forcible stop by the Kelso police was an arrest. The state concedes, as it must, that no probable cause to arrest defendant existed at the time his vehicle was stopped. *See State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973). It is well settled, however, that police may adopt an intermediate response between actual arrest and the rejection of any information which falls below the level of probable cause. The police may, under appropriate circumstances, forcibly detain persons for the purpose of limited investigation of possibly criminal activity, although no probable cause to arrest exists. *Terry v. Ohio, supra.*

While *Terry v. Ohio* involved first-hand observations of suspicious activities by an experienced officer, the United States Supreme Court has specifically rejected the argument that reasonable cause for an investigative stop can only be based upon such personal observation, rather than on information supplied by another person. *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

The standard against which an informant's tip must be measured for the purpose of supporting an investigative detention is less rigorous than that required by a probable cause analysis. *See State v. Chatmon, supra; cf. State v. Simms,* 10 Wn. App. 75, 516 P.2d 1088 (1973). Nonetheless, the tip must demonstrate some "indicia of reliability." As said in *Adams v. Williams, supra* at 147:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or

when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

 We are of the opinion that the tip in the present case bore none of the "indicia of reliability" contemplated by *Adams v. Williams*. Here the informant was completely anonymous. He proffered no information about himself nor afforded the officers any information from which they could infer his truthfulness.[1] These facts contrast strikingly with those in *Adams v. Williams, supra* at 146-47:

> [W]e believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. *This is a stronger case than obtains in the case of an anonymous telephone tip.* The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e.g., Spinelli* v. *United States*, 393 U. S. 410 [21 L. Ed. 2d 637, 89 S. Ct. 584] (1969); *Aguilar* v. *Texas*, 378 U. S. 108 [12 L. Ed. 2d 723, 84 S. Ct. 1509] (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.

(Footnote omitted. Italics ours.)

Moreover, the collateral detail of the anonymous tip was

---

[1]We recently observed, by way of dictum, that an investigative detention may in some instances be based upon information supplied by a nameless informant. *State v. Chatmon*, 9 Wn. App. 741, 515 P.2d 530 (1973). We adhere to this view, in the context of the factual pattern in that case. In *Chatmon*, the informant, while refusing to identify himself, came forward personally to the military police to relate his information. Moreover, he appeared to be an ordinary citizen, and his description of how he came about his information was extremely detailed and specific. Such circumstances, we believe, may impart "indicia of reliability" to the tip of an otherwise nameless informer. In the case of an unidentified phone caller, however, the cloak of anonymity is complete.

merely descriptive in nature. Corroboration of this detail justified the officers only in concluding that the subject vehicle was, indeed, the vehicle described by the unknown informant. *See Whiteley v. Warden,* 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971). As *Whiteley* points out, corroboration of such information, where it does not in itself suggest criminal activities, supports neither an inference that the informant is reliable nor that his conclusion that criminal activities are afoot was reliably reached. *Whiteley v. Warden, supra* at 567. Hence, the pre-detention observations of Chief Thorpe and Sergeant Eby here imparted no "indicia of reliability" to the anonymous information.

A distinction must be made between merely *descriptive* information which enables the officers to simply determine the identity of the subject, and a tip which incorporates detailed *predictive* information about a suspect's movements, which may, upon corroboration, justify a conclusion that the informer was privy to the suspect's activities. Such a conclusion may support an inference that the informer's information was obtained in a reliable way. *See Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959), and *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973).

It is difficult to conceive of a tip more "completely lacking in indicia of reliability" than one provided by a completely anonymous and unidentifiable informer, containing no more than a conclusionary assertion that a certain individual is engaged in criminal activity. While the police may have a duty to investigate tips which sound reasonable, absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either the presence of criminal activity or that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

The state cross-appeals from the order of the trial court directing the return to defendant of certain merchandise seized along with the gambling devices from his vehicle.

The position of the state is that this merchandise could be used as prizes or awards in gambling activities, and thus that it should be destroyed under the authority of former RCW 9.47.110, which provides:

> Seizure and disposition of gambling devices. It shall be the duty of all peace officers to search for and seize all tables, slot machines, or other article, machine, device or apparatus of the kind commonly used for gambling, or operated for the winning or losing of money or property, or any representative of either, upon any chance or uncertain or contingent event, and all property useful in the operation or maintenance of a bucket shop, and take the same before a magistrate. If in the judgment of such magistrate any of such articles may be useful as evidence in the trial of any case, he may order the same held for such trial or delivered to the prosecuting attorney; otherwise, he shall order the same to be forthwith destroyed. After the final hearing and disposition of any case in which any of said articles may be held or used as evidence, whether such case result in a conviction or acquittal, the magistrate or judge having jurisdiction of such case shall forthwith order all such articles destroyed.

■ We agree with defendant that this statute, being penal in nature, should be strictly construed. *State v. Boyer*, 4 Wn. App. 73, 480 P.2d 257 (1971). We are of the view that the trial court correctly distinguished between gambling devices "per se," clearly within the purview of the statute, and mere merchandise which "could have" been used for prizes. The gambling devices are subject to RCW 9.47.110 and will be destroyed upon the remittitur.

Judgment affirmed in part, reversed in part.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied January 31, 1974.

Review granted by Supreme Court March 18, 1974.