[No. 47076–6. En Banc. December 31, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. WADE L. SIELER, ET AL, *Petitioners.*

*Newsum & Grantham* and *Gene M. Grantham,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Robert J. Conklin, Deputy,* for respondent.

BRACHTENBACH, J.—Defendants appeal their convictions for possession of controlled substances in violation of RCW 69.50.401(a). The trial court denied defendants' motion to suppress the contraband seized by the police and their confessions given after arrest. The Court of Appeals affirmed. We reverse.

While waiting to pick up his son at about noon in the parking lot of Kent–Meridian High School, James Tuntland observed what he believed to be a drug sale in another car in the parking lot. Tuntland informed the school secretary by telephone of his conclusion, described the car,

reported its license number, apparently gave her his telephone number, and left.

The secretary called the police and Officers Sweeney and Wandrey were quickly informed by radio that a drug transaction had possibly occurred in the school parking lot in a black–over–gold Dodge with a certain license number. No details of the transaction were given. The officers believed it was not unusual for such transactions to occur during the noon hour in the high school parking lot. While proceeding to the high school, Sweeney radioed for information on how the sale was discovered and asked if the informant had been identified. The officers were simply told that a Mr. Tuntland had concluded a drug transaction had occurred, but that he was not available. The officers knew nothing about the informant beyond his name, nor why he concluded a drug transaction had occurred. One officer, by radio, attempted to obtain a description of the suspects, but apparently none was available. In the officer's words, "all we had to go on was the vehicle description."

The school vice–principal had talked to the occupants of the car a few minutes before the officers' arrival. He identified two girls as students. The defendants were not students. The four were playing cards. The vice–principal informed the officers before they went over to the car containing the defendants that he had not observed any contraband, nor even anything unusual or suspicious.

The car fit the description given by the informant, except one letter of the license number was incorrect. Defendant Cerar, in the driver's seat, was approached by Officer Sweeney, and defendant Sieler, in the front passenger's seat, was approached by Officer Wandrey. While talking to Cerar, Sweeney smelled the faint odor of stale burnt marijuana. Sweeney examined Cerar's identification, and asked him to enter his police car for questioning. After Cerar had exited, Wandrey saw three pills of "speed" on the driver's seat which he had been unable to observe prior to Cerar's departure from the car. Wandrey picked up the pills, and immediately after he did so, Sieler handed Wandrey a film

container containing speed. The defendants were taken to the police station, where they signed a written waiver of their *Miranda* rights and confessed.

Prior to trial, defendants moved to suppress the pills and confessions. This motion was denied, and defendants were later convicted of delivering amphetamines. In an unpublished opinion, Division One of the Court of Appeals held that the trial court properly denied defendants' suppression motion.

Defendants contend that the trial court and Court of Appeals committed reversible error on two grounds: (1) the informant's tip did not justify investigatory detention and questioning of the defendants, since it did not provide the police with a well founded suspicion of criminal activity by the defendants; and (2) Officer Sweeney's request that Cerar exit his automobile constituted an arrest unsupported by probable cause. Since we reverse the Court of Appeals on the basis of defendants' first argument, we express no opinion on defendants' latter contention.

The parties have treated Mr. Tuntland as the informant. In fact the information was transmitted by a school secretary. The record is deficient as to exactly what Tuntland told the secretary and exactly what the secretary told police headquarters. Neither Tuntland nor the secretary was called as a witness. For purposes of this case, we, as do the parties, treat Tuntland as the informant and assume that the secretary told the police only that which was relayed to the officers, *i.e.*, a suspected narcotics sale had taken place and a description of the vehicle allegedly involved.

██ Although probable cause is lacking, police may briefly detain and question an individual if they have a well founded suspicion based on objective facts that he is connected to actual or potential criminal activity. *See, e.g., Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *see State v. Gluck*, 83 Wn.2d 424, 426,

518 P.2d 703 (1974). An informant's tip cannot constitutionally provide police with such a suspicion unless it possesses sufficient "indicia of reliability." *See Adams v. Williams,* 407 U.S. 143, 147, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *State v. Lesnick,* 84 Wn.2d 940, 943, 530 P.2d 243 (1975).

One of our prior decisions is controlling in this case. *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975), is very similar to the present case. An anonymous telephone informant told the police that a van was carrying illegal gambling devices. He did not indicate how he reached this conclusion but did describe the van and report its license number. The police quickly located a van fitting the description provided by the informant, but some of the numerals of the license number had been transposed. The police followed the van for a short distance, and although they had observed no criminal activity, the police pulled the van over. Gambling devices were in plain view after the stop. *Lesnick,* at 941–42.

We held that the anonymous informant's accurate description of the vehicle was "not such corroboration or indicia of reliability" which would provide the police with a well founded suspicion to justify an investigatory detention. *State v. Lesnick, supra* at 943. We stated that:

> It is difficult to conceive of a tip more "completely lacking in indicia of reliability" than one provided by a completely anonymous and unidentifiable informer, containing no more than a conclusionary assertion that a certain individual is engaged in criminal activity. While the police may have a duty to investigate tips which sound reasonable, [1] absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either [2] the presence of criminal activity or [3] that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

*State v. Lesnick, supra* at 944 (quoting from *State v. Lesnick,* 10 Wn. App. 281, 285, 518 P.2d 199 (1973)). The State is unable to satisfy any of the enumerated criteria.

The State cannot satisfy the first criterion because the facts of this case indicate reliability no more than those of *Lesnick.* To distinguish *Lesnick,* the Court of Appeals relied upon the fact that the informant had given his name to the school secretary. We are not persuaded by this attempted distinction. The reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable.

Even assuming that an unknown but named telephone informant was adequately reliable, thereby distinguishing this case from *Lesnick,* this reliability by itself generally does not justify an investigatory detention. Although there is some authority to the contrary, 3 W. LaFave, *Search and Seizure* § 9.3, at 100 (1978) (citing cases), the State generally should not be allowed to detain and question an individual based on a reliable informant's tip which is merely a bare conclusion unsupported by a sufficient factual basis which is disclosed to the police prior to the detention.[1] *See State v. McCord,* 19 Wn. App. 250, 254–56, 576 P.2d 892 (1978); 3 W. LaFave, *supra* § 9.3, at 99–100; *cf. United States v. McLeroy,* 584 F.2d 746, 748 (5th Cir. 1978) (Wisdom, J.). Some underlying factual justification for the informant's conclusion must be revealed so that an assessment of the probable accuracy of the informant's conclusion can be made. It simply "makes no sense to require some 'indicia of reliability' that the informer is personally reliable but nothing at all concerning the source of his information . . ." 3 W. LaFave, *supra* § 9.3, at 100. This additional requirement helps prevent investigatory detentions made on the basis of a tip provided by an honest informant who misconstrued innocent conduct. It also

---

[1] Of course such a conclusory allegation by a reliable informant is sufficient to justify an investigatory detention if, as *Lesnick*'s second and third criteria indicate, it is corroborated by adequate police observation.

reduces such detentions when an informant, who has given accurate information in the past, decides to fabricate an allegation of criminal activity. *Cf.* Comment, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 713–14 (1972) (noting that informants who have given reliable information in the past not infrequently make false allegations).

Even if the reliability of the informant had been established in this case, the detention and questioning of defendants was unconstitutional. The police conducted an investigatory detention based upon an informant's bare conclusion unsupported by any factual foundation known to the police. Officer Sweeney's commendable but unsuccessful attempt to obtain such a foundation prior to confronting the defendants does not change the result. Of course neither does the discovery of drugs after the detention justify the police conduct. *State v. Lesnick, supra* at 944; *see United States v. Di Re,* 332 U.S. 581, 595, 92 L. Ed. 210, 68 S. Ct. 222 (1948).

■ The State clearly cannot satisfy *Lesnick*'s second criterion. After arriving at the scene, the police proceeded almost immediately to the car containing the defendants. Prior to their approach to the car, they did not observe any conduct which tended to corroborate the informant's tip that criminal activity was present. In fact, that tip was in effect challenged by the vice–principal, presumably a very reliable person, when he told the police that only minutes before their arrival he had talked to the occupants of the car and had not observed anything illegal, or even unusual. Lastly, the presence of the defendants in an area where drug transactions were known to occur could not by itself give rise to a reasonable suspicion that they were engaged in criminal activity. *See Brown v. Texas,* 443 U.S. 47, 52, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979).

■ Nor can the State satisfy *Lesnick*'s third criterion. As we held in that case, police observation of a vehicle which substantially conforms to the description given by an

unknown informant does not constitute sufficient corroboration to indicate that the informant obtained his information in a reliable fashion.

*Lesnick* indicated that these criteria are not to be analyzed in isolation, for the seriousness of the criminal activity reported by an informant can affect the reasonableness calculus which determines whether an investigatory detention is permissible. *State v. Lesnick, supra* at 944–45. *See State v. McCord, supra* at 253. While the criminal activity reported here was clearly more serious than that reported in *Lesnick,* we believe the police conduct was nonetheless unreasonable. Given the informant's uncertain trustworthiness, the absence of any facts known to the police supporting his allegation, and the unusual circumstance that his allegation was in effect challenged by a presumably very reliable person who had an excellent opportunity to view the defendants immediately before the officers' arrival, the police simply could not have formed a well founded suspicion of criminal activity by the defendants.

We recognize that our holding is arguably inconsistent with several decisions which have held that if an anonymous informant provides a description of a vehicle he claims contains drugs, and a vehicle fitting this description is later observed by the police, an investigatory detention is permissible. *See Radowick v. State,* 145 Ga. App. 231, 244 S.E.2d 346 (1978); *State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974); *State v. Barton,* 92 N.M. 118, 584 P.2d 165 (1978). *But see United States v. McLeroy,* 584 F.2d 746 (5th Cir. 1978) (Wisdom, J.) (reasonable suspicion of criminality not established when anonymous informant provided police with suspect's name and address, described his vehicle in detail, and this information was verified before the investigatory detention of defendant in his automobile). Professor LaFave has criticized this result reached by these state courts as erroneous, 3 W. LaFave, *supra* at 10 n.243 (Supp. 1980), and we do not find these decisions sufficiently persuasive to justify departure from *Lesnick.*

Were we to sanction the police conduct in this case, it would mean that

anyone can call the police, [fabricate an alias], describe an automobile . . . and allege possession of illegal drugs with the result that the [driver] will be pulled over, required to identify himself, interrogated about criminal behavior, and his automobile subjected to a visual search.

*State v. Hobson, supra* at 927 (McQuade, J., dissenting).

Allowing investigatory detention and questioning upon such an insubstantial basis is plainly contrary to the commands of the Fourth Amendment.

The causal chain between the illegal investigatory detention and the evidence obtained at the school, and defendants' subsequent confessions, was prompt and direct, nor was that chain "interrupted by some intervening circumstance so as to remove the 'taint'", *United States v. Crews,* 445 U.S. 463, 471, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980), from the unlawful police conduct. *See United States v. Crews, supra* at 1249–50. Defendants' motion to suppress the evidence and confessions accordingly should have been granted.

Reversed.

UTTER, C.J., and ROSELLINI, HICKS, and WILLIAMS, JJ., concur.

DOLLIVER, J. (dissenting)—The majority relies upon *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975), to justify the suppression of the contraband found by police in defendants' automobile and the confession of defendants made subsequent to their arrest. It seems to me *Lesnick* is an extraordinarily slender reed, and that a recounting of the facts in each case will demonstrate they are completely different. The facts in *Lesnick* are:

The Kelso Police Department received a telephone call advising that there was in the city a described van pulling a trailer, the driver of which was attempting to sell "punchboards" in the city. The caller also supplied a license plate number. The caller remained completely

anonymous, refusing to identify himself and not providing any information as to the source of his knowledge.

The police chief and a sergeant participated in a search and soon located the described van and trailer in a private club parking lot. They drove to within a short distance of the subject vehicle, and observed that its license number was similar to that given by the informer, though some numerals were transposed. The officers parked their car on an adjacent city street and remained to observe the vehicle. Shortly thereafter, the van was driven from the parking lot onto the street. The officers followed the vehicle for a block and a half, then pulled it over with siren and lights. Up to that time, they observed neither traffic violations nor any other indications of criminal activity on the part of the driver.

The driver produced his driver's license and the chief then walked to the front of the van to check the license plate, and observed gambling paraphernalia through the driver's window. Defendant was then placed under arrest for possession of gambling devices pursuant to RCW 9.47.030, repealed Laws of 1971, 1st Ex. Sess., ch. 280, § 23. Defendant's vehicle was towed to the police station and searched pursuant to a warrant. A large number of gambling devices, plus certain merchandise, were seized.

*State v. Lesnick, supra* at 941–42.

For a tip to have an "indicia of reliability" the court held in *Lesnick,* at page 944, that it must satisfy one of the following criteria: (1) that it was received under circumstances suggesting the informant's reliability; (2) that there were some corroborative observations suggesting criminal activity; and (3) that there were some corroborative observations suggesting the informer's information was obtained in a reliable fashion.

Unmentioned by the majority is the testimony of Officer Sweeney that he was familiar with narcotics activity in the city of Kent (where Kent–Meridian High School is located) and with the general narcotics activity and method of operation in the area directly surrounding Kent–Meridian High School. The questioning of Officer Sweeney on direct examination is instructive:

Q. You indicated previously that you were somewhat experienced with narcotics activity, particularly that around the Kent–Meridian High School. Would you indicate from your past experience and knowledge that you have directly or through your activity in that department at what location and what manner and type of persons are normally involved in narcotics trafficking at the high school?

. . .

A. In my interviews with juveniles and suspects in that area, I do know that adults are involved in the sale of narcotics, and that frequently the transactions take place from automobiles during the lunch hour at the school when the majority of the students have free access all over the school grounds. I have been involved in attempting to locate suspect descriptions and vehicles in narcotic sales at the noon hour, but this is the only one I have been successful in.

Q. Sir, do you know whether or not these transactions have characteristically involved non–students or students?

A. As a general statement, I—well, I guess I really can't say. I know that non–students are involved and students are involved as well.

Q. So it would be both? Would that be a fair statement?

A. Yes.

Q. From your experience in law enforcement, Officer, do you have knowledge or a feeling as to whether or not persons involved in narcotics transactions as a course are armed or carry weapons?

A. They frequently are armed, yes.

The police officers received a call from the high school reporting that the father of a student had called giving his name and telephone number. The parent advised he believed a drug sale was occurring in the north parking lot of Kent–Meridian High School. The exact description of the automobile involved in the alleged transaction and a reasonably accurate description of the license plate was given. The police, with this information and the knowledge that drug sales which involved both students and nonstudents had in fact occurred at Kent–Meridian High School, arrive at the scene. They find the car, as identified, at the

location where they were advised it would be. In contrast to *Lesnick,* the car was parked. There was no forcible stop; no one was "pulled over" to the side of the road. Surely these are circumstances suggesting the informant's reliability and thus sufficient to meet the requirements of *Lesnick.*

The only fact which might argue against the reasonableness of the actions of the police concerned the observations of the vice–principal of Kent–Meridian High School. In his testimony, Officer Sweeney said the vice–principal told him (1) the two males (the defendants) in the front seat of the car were nonstudents and the two females in the back seat were students with whom he had had some prior disciplinary problems; and (2) he had had the defendants under observation prior to the arrival of the police officers and had observed no suspicious activity or any contraband.

I do not believe this was enough to rule out further investigation of the kind conducted by the police. The father of a student reported he believed a drug sale to be in progress. It is not unreasonable to believe that by the time this information had been conveyed to the secretary, by the secretary to the vice–principal and the vice–principal had gone to the parking lot that the transaction was completed. It is also not unreasonable to believe that the drug dealers or their purchasers would not flaunt the drugs about so as to arouse the suspicions of other students, school authorities or anyone else in the school yard. I am unpersuaded the observations of the vice–principal are in any way relevant to the question of the reasonableness of the police actions.

The majority cites *Lesnick* to the effect that "the seriousness of the criminal activity reported by an informant can affect the reasonableness calculus which determines whether an investigatory detention is permissible." Nonetheless, it finds the conduct of the police unreasonable.

The exact language in *Lesnick* to which the majority refers reads as follows:

Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered

in light of the particular circumstances facing the law enforcement officer. In this case, the suspected crime was a gross misdemeanor. It posed no threat of physical violence or harm to society or the officers. . . . [W]e do emphasize that if and when other cases arise they will necessarily be judged in light of their particular facts . . .

*Lesnick,* at 944–45.

The policy language found in *Lesnick* draws clear lines between what constitutes serious criminal activity and what does not constitute serious criminal activity. Where there is no threat of physical violence, harm to society or harm to officers, the criminal activity does not appear to be serious. This was so in *Lesnick.*

However, in this case, the criminal activity (*i.e.,* drug dealing to high school students) poses grave harm to society. The line drawn in *Lesnick* has been crossed; the actions of the police were reasonable.

In the words of the trial judge "[I]f they didn't go over there and question those people at that point, then they should be fired as policemen, because they would not be doing their job." I agree. Given the circumstances here, I cannot believe society, the federal or state constitutions, or this court could reasonably expect or require the police to do nothing. Yet this seems to be the message of the majority. Indeed, under the view of the majority, the appropriate actions for the police officers would have been to have had another cup of coffee and continue a leisurely lunch.

I would affirm the Court of Appeals and I dissent.

STAFFORD and HOROWITZ, JJ., concur with DOLLIVER, J.