[No. 22914–1–I.   Division One.   May 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM LEWIS CONNER, *Appellant.*

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Anna Marie Dremousis, Deputy,* for respondent.

SCHOLFIELD, J.—William Lewis Conner appeals his conviction for one count of theft in the second degree. We affirm.

## FACTS

On May 3, 1988, Conner was charged by information with the crime of theft in the second degree, for stealing an access device (bank card) and wallet belonging to John W. Harrison, in violation of RCW 9A.56.040(1)(c).[1] Conner moved to suppress evidence obtained in the search incident to arrest. After hearing, the trial court denied his motion. Following a stipulated trial, the court found Conner guilty as charged. Conner was sentenced to 12 months 1 day. The facts of the case are as follows:

On April 28, 1988, Sergeant James Laing of the King County police learned through radio dispatch that the police had received a call from the Budget Rent-a-Car lot at 188th S. and Pacific Highway S., informing them that a man suspected of taking the wallet of a salesperson at a nearby car sales lot was being "stalled" by the employees at Budget. The radio dispatcher described the suspect as a white male of slender build, about 6 feet 1 inch, with dark receding hair and glasses, wearing a plaid jacket, white shirt, tan pants and black shoes. The man was described as either middle-aged or in his forties. The Budget employee

---

[1] RCW 9A.56.040 states in pertinent part:

"(1) A person is guilty of theft in the second degree if he commits theft of:

". . . .

"(c) An access device; . . .."

had also indicated the victim was on his way to the Budget lot.

When Sergeant Laing arrived at the Budget office, he observed an individual matching the description given seated at a desk talking to one of the sales representatives. The individual was William Lewis Conner. Laing waited until Conner finished his conversation with the sales representative and then told Conner that he needed to talk with him.

Laing and Conner went outside, and Laing patted Conner down for weapons. Laing discovered some bulky legal papers that were rolled inside Conner's pocket, and he removed those. Just then, Officer Dwight Chamberlain arrived, and Chamberlain took over for Laing. Chamberlain was in the process of completing the pat–down search when an individual named John W. Harrison approached Chamberlain and told him that Conner was the man who had stolen Harrison's wallet.

At that time, Conner had emptied his pockets, Chamberlain had asked Conner if that was all, and Conner had indicated that it was. Chamberlain felt something in Conner's outside jacket pocket and a bulky item in Conner's lower left jacket pocket, and Chamberlain removed them. The items removed by Chamberlain were an American Express credit card in the name of John Harrison, a Visa card, and a wallet that Harrison identified as his. Chamberlain opened the wallet and observed Harrison's Washington driver's license, other photo identification, and miscellaneous items, including other credit cards.[2]

Chamberlain testified that he did not question Harrison before conducting the search. The only information he had from Harrison was Harrison's indication that Conner was the man who had stolen his wallet a short time earlier. When asked a clarifying question, Chamberlain indicated

---

[2]The officer's testimony did not specifically mention the access device, although this was in the information.

that he found Harrison's wallet and credit cards *after* Harrison arrived and told Chamberlain that Conner was the one who had taken his wallet.

After finding Harrison's wallet in Conner's possession, the police arrested Conner and placed him in a patrol car. Chamberlain then took a statement from Harrison, in which Harrison indicated that Conner had been left alone in the office at the Thrifty car sales lot where Harrison worked. Harrison's jacket containing the wallet had been left in the office. After Conner left the Thrifty lot, the wallet was discovered to be missing.

In deciding the motion to suppress the evidence obtained in the search, the trial court framed the issue as whether the police officers had probable cause to arrest in the absence of an inquiry as to the factual basis for the victim's accusation of theft.

### PROBABLE CAUSE FOR INVESTIGATORY STOP

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . ..

U.S. Const. amend. 4. Similarly, article 1, section 7 of the Washington Constitution provides that:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

■ In the absence of probable cause to arrest, police are entitled to briefly detain and question an individual if they have "a well founded suspicion based on objective facts that [the individual] is connected to actual or potential criminal activity." *State v. Sieler,* 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); *see also Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Analysis of such an investigatory stop is a 2–step process, asking (1) whether the initial detention was justified, and (2) whether the detention was reasonably related in scope to the reason for the detention. *State v. Ortiz,* 52 Wn. App. 523, 762 P.2d 12 (1988).

■■ An informant's tip cannot constitutionally provide police with the "[well founded] suspicion" unless the tip possesses sufficient "'indicia of reliability.'" *Sieler,* at 47. *See also Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). The requisite indicia of reliability are as follows:

> Absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either the presence of criminal activity or that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

*State v. Lesnick,* 10 Wn. App. 281, 285, 518 P.2d 199 (1973), *aff'd,* 84 Wn.2d 940, 944, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975). *See also State v. Kennedy,* 107 Wn.2d 1, 726 P.2d 445 (1986). However, no single rule can be set forth to apply to every possible confrontation between the police and a citizen. Thus, the reviewing court must evaluate the reasonableness of the police action and the extent of the intrusion in light of the particular circumstances. *Lesnick,* at 944.

In *State v. Sieler, supra,* the police received a telephone call from a school secretary, informing them that a drug transaction had possibly taken place in the school parking lot in a black–over–gold Dodge with a certain license plate number. The secretary told the police that a parent named Mr. Tuntland had seen what he believed to be a drug transaction, but that he was not available to talk to police. There was no description of the subjects. *Sieler,* at 45.

The defendants' car fit the description given by the school secretary, except that one number of the license plate was different. While talking to the occupants, the officers smelled the odor of burnt marijuana. When the defendants left the car at the officers' request, the officers observed "speed" in the driver's seat and in a container. In analyzing the validity of the *Terry* stop, the *Sieler* court noted that the circumstances did not meet any of the criteria set forth in *Lesnick.*

> The reliability of an anonymous telephone informant is not significantly different from the reliability of a named but

> unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable.

*Sieler,* at 48. The *Sieler* court went on to hold that the facts before it also did not satisfy the other *Lesnick* criteria, and thus there was no valid *Terry* stop.

We hold that the officers made a valid investigatory stop when they detained Conner at the Budget office. At the time the police stopped Conner, they knew that radio dispatch had received a telephone call from an individual who identified him– or herself as being an employee of Budget Rent–a–Car, located at 188th S. and Pacific Highway S. The employee told police that a crime had been committed—the theft of a wallet from a salesman at a nearby car lot.

The Budget employee then stated that an individual matching the description of the suspected thief was there at the Budget office, and that the individual was being "stalled" by other employees. The very specific description of the suspect was also conveyed to the police. The Budget employee also told police that the victim was on his way to Budget to identify the suspect and that the theft had occurred within the hour.

Applying the factors described in *Lesnick* to the facts before us, it might initially appear that the factor concerning reliability of the informant is not satisfied, because the facts are so similar to those in *Sieler,* concerning a telephone informant. However, a crucial difference between the facts here and those in *Sieler* is that the Budget employee was calling to report a *crime,* not just some suspicious activity. She also identified herself as a Budget employee at a specific location. We hold that *Sieler* is distinguishable, and that a citizen informant reporting a crime can be inherently reliable for purposes of a *Terry* stop, even if calling on the telephone rather than speaking to the police in person.

In addition, we find that the *Lesnick* factor concerning the issue of whether the information was obtained in a

reliable fashion was satisfied. The Budget employee was able to give the police a detailed description of the suspect, told the police that the theft occurred within the hour, told the police that the victim was a salesperson at the Thrifty car lot, and that the victim was on his way to the Budget location. This amount of specific detail about the commission of the crime suggests that the information was obtained in a reliable fashion, *i.e.,* from the victim himself.

Having found fulfillment of the *Lesnick* factors, we hold that the initial detention was justified. In addition, there would appear to be no question as to the second *Terry* stop requirement concerning the scope of the intrusion. The police officers asked Conner some questions and conducted a pat–down search. This seems reasonably related in scope to the reason for the stop. Thus, we hold that the police conducted a valid investigatory stop.

## PROBABLE CAUSE TO ARREST

In *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), the United States Supreme Court discussed the quantum of evidence needed for a warrantless arrest as follows:

> It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, though the arresting officer need not have in hand evidence which would suffice to convict. . . .
>
> Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. . . . The threshold question in this case, therefore, is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest of [the defendant].

(Citations omitted.) *Wong Sun,* at 479–80.

■ Probable cause is a quantum of evidence "less than . . . would justify . . . conviction," yet "more than bare suspicion". *Brinegar v. United States,* 338 U.S. 160, 175, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949). For a warrantless arrest, probable cause exists where the facts and circumstances within the arresting officer's knowledge, and of which he

has reasonably trustworthy information, are sufficient to permit a person of reasonable caution to believe that an offense has been or is being committed. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). Put another way, in order for an officer to make an arrest, he or she need not have facts sufficient to establish guilt beyond a reasonable doubt, but only reasonable grounds for suspicion, along with evidence of circumstances sufficiently strong in themselves to allow a cautious and disinterested person to believe the suspect is guilty. *State v. Scott,* 93 Wn.2d 7, 604 P.2d 943, *cert. denied,* 446 U.S. 920, 64 L. Ed. 2d 275, 100 S. Ct. 1857 (1980).

■ If the facts supporting a determination of probable cause are based on information provided by an informant, the standards set forth in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and its progeny must be considered. This is true whether the issue is probable cause for an arrest or search without a warrant, or a magistrate's determination for issuing a warrant. *State v. Chatmon,* 9 Wn. App. 741, 745 n.2, 515 P.2d 530 (1973) (citing *Spinelli v. United States,* 393 U.S. 410, 417 n.5, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)). Although the *Aguilar–Spinelli* test is usually phrased in terms of a magistrate's determination for a warrant, in circumstances such as those before us, the test requires some underlying circumstances supporting how the informant came to have his or her information (basis of knowledge prong) and some circumstances indicating the reliability of the informant (veracity prong). *See Chatmon,* at 745.

■ Here, the officers had all of the same information that justified the investigatory stop. In addition, they had the statement from Harrison, a citizen informant, that Conner was the one who had stolen his wallet. The test for determining the reliability of an identified citizen informant was set forth in *State v. Northness,* 20 Wn. App. 551, 582 P.2d 546 (1978). In that case, the Washington Court of Appeals held that the *Aguilar–Spinelli* test can be less stringent in the case of a named informant than in that of

an anonymous or professional informant. *Northness,* at 556–57. A detailed description of the circumstances concerning the citizen informant's basis of knowledge, sufficient to establish the reliability of the information, provides "'built in credibility guides to the informant's reliability". *Northness,* at 557 (quoting *McCreary v. Sigler,* 406 F.2d 1264 (8th Cir. 1969)). In the case of an eyewitness to or victim of a crime, the reliability requirement is even more liberal:

> Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the "reliability" requirement might be further relaxed.

*State v. Chatmon,* 9 Wn. App. 741, 748 n.4, 515 P.2d 530 (1973).

It is true that the officers here did not develop a detailed description of Harrison's basis of knowledge as an alternative means for showing Harrison's credibility. Some questioning of Harrison before making an arrest would have been appropriate. However, the police knew that he was John W. Harrison, that he had been expected to arrive there, and that he was the victim. In addition, the police knew certain details of the crime as noted above. We hold that this information, taken together is sufficient to show reliability.

Conner also argues that the police failed to ascertain any factual basis for Harrison's assertion that Conner stole his wallet. In support of his contention that mere conclusions from an informant are insufficient, Conner cites *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973) and *State v. Bowers,* 36 Wn. App. 119, 672 P.2d 753 (1983). Both *White* and *Bowers* dealt with informants' tips that the defendants were dealing drugs, and that they were currently in possession of such drugs.

The circumstances in those cases were markedly different from the facts here. Harrison's statement reported that he was the victim of a theft and that Conner was the thief.

Probable cause was present here, such that a person of reasonable caution could determine that an offense had been committed by Conner. This is in contrast to circumstances in which an informant, who is not a victim or perhaps not even an eyewitness, tells the police, not of an actual crime that has been committed, but rather about suspicious activity that might be criminal in nature.

To hold that a victim must explain *how* he or she knows that he has been victimized and *why* he or she believes that the suspect is the perpetrator would exalt form over substance. Once the police have sufficient evidence that a crime has been committed, along with an identification of the suspect by the victim, there is probable cause for an arrest, even where the victim's knowledge is circumstantial as it is here.

Judgment affirmed.

COLEMAN, C.J., and GROSSE, J., concur.

Review denied at 115 Wn.2d 1020 (1990).