IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32634-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DANIEL BRYON KINGMA, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Daniel Bryon Kingma appeals his conviction for unlawful

possession of methamphetamine, contending the trial court erred in denying his motion to

suppress evidence seized pursuant to a search incident for arrest for criminal trespassing.

Mr. Kingma contends that the search was unlawful because law enforcement lacked

probable cause to believe he committed a crime. We find no error and affirm.

FACTS

On October 14, 2013, Grant County Corporal Gary Mansford was called to Dale

Kingma's residence regarding an alleged trespass by his son, Daniel Kingma, age 40.[1]

When Corporal Mansford arrived at Dale's property, Dale explained that Daniel had

---

[1] To avoid confusion, we refer to Dale and Daniel Kingma by their first names. We intend no disrespect.

come onto the property to retrieve golf clubs that Dale had placed on the edge of the property. According to Dale, when Daniel arrived he was high on drugs, yelling, and wanting to fight. Dispatch confirmed that Daniel had been trespassed from his father's property on October 6, 2013, by Grant County Sheriff's Deputy David Delarosa.

Dale told Corporal Mansford that he had last seen Daniel crossing the street to a neighbor's house. Corporal Mansford contacted Daniel in the neighbor's driveway. Daniel admitted going onto his father's property, but claimed his father had invited him. Corporal Mansford arrested Daniel for criminal trespass. During a search incident to arrest, he found methamphetamine in Daniel's pocket.

The State charged Daniel with possession of a controlled substance (methamphetamine). Clerk's Papers (CP) at 1. Daniel moved to suppress the methamphetamine in a CrR 3.6 hearing.

At the hearing, Deputy Delarosa testified that on October 6, 2013, he responded to a call from Dale regarding the theft of a car. He stated that Dale and Daniel eventually agreed that "[Daniel] would leave the property and not come back." Report of Proceedings (Jan. 15, 2014) (RP) at 24. Deputy Delarosa told Daniel that he was trespassed from his father's property and notified dispatch to flag Daniel in the Spillman database as trespassed from Dale's property.

2

Corporal Mansford testified that he had been involved in previous incidents regarding Daniel trespassing on his father's property. He stated that when he arrived at Dale's property on August 14, 2013, Dale told him that Daniel had arrived to get some golf clubs, but that Daniel had entered the property wanting to fight. Corporal Mansford stated that Dale showed him a photograph he took of Daniel just before Corporal Mansford arrived at the property. The photograph shows Daniel on Dale's property flipping his two middle fingers to Dale. Exhibit 1. Corporal Mansford also obtained the following written statement from Dale:

> Danny Kingma trespassed on 10-14-13 wanted a set of golf clubs
> Danny came onto my property yelling misc. profanity and wanted to fight.
> This is my son and I have a business to run. And I can't have him on my property.

Exhibit 2.

Corporal Mansford also testified that the Spillman database confirmed that Daniel had been trespassed from his father's property about a week earlier. According to Corporal Mansford, when he contacted Daniel, Daniel told him his father had invited him onto the property to retrieve his golf clubs.

Dale did not testify at the CrR 3.6 hearing. Daniel testified that he believed he had the right to be on his father's property because he was not given written notice that he

3

was trespassed from the property. He also stated that he had made arrangements with his father to return to the property and retrieve personal property.

Defense counsel argued that Daniel's claim that he was invited onto the property negated probable cause and that a "reasonably cautious" officer would have investigated the claim. RP at 85.

The trial court denied Daniel's motion to suppress the evidence, concluding, "Corporal Gary Mansford had formed information that led to the deputy developing probable cause to believe that Daniel Kingma had unlawfully trespassed upon [Dale's] property." CP at 73. The court entered the following disputed findings of fact:

**DISPUTED FACTS:**

2.12 On October 6, 2013 Deputy Delarosa contacted Daniel Kingma 4156 Rd. F NE and verbally informed the defendant that he was trespassed from that property. On the same date the information of the defendant being trespassed was entered into the information system "Spillman".

2.13 Dale Kingma informed Corporal Mansford that Daniel Kingma was trespassing on Dale Kingma's property. That Daniel had arrived to retrieve Daniel's golf clubs, and would not leave. When Dale asked him to leave Daniel was attempting to fight Dale. Dale took a picture with his cell phone of Daniel while Daniel was on the property and attempting to fight Dale.

2.14 Dale showed the picture he took of Daniel when Daniel was on the property refusing to leave and attempting to fight to [sic] Corporal Mansford.

4

2.15   Corporal Mansford testified he has been to that residence and property before on the same type of call.  At that time Daniel Kingma was asked to leave the property and not return.

2.16   Dispatch advised Corporal Mansford that Deputy David Delarosa had notified Dispatch that on October 6th, 2013, Daniel Kingma had been notified by Deputy Delarosa that he was trespassed from going to, or going on, the property located at 4156 Rd F NE, Moses Lake, Washington.

2.17   Deputy David Delarosa testified that on October 6th, 2013 he had informed Daniel Kingma verbally at the scene that Daniel was trespassed from 4156 Rd F NE, Moses Lake Washington and was not to come back. Deputy Delarosa then put the information that Daniel Kingma was trespassed from 4156 Rd. F NE, Moses Lake Washington, in the Spillman system for all officers and dispatches information.

2.[1]8   Both Deputy's [sic] testified that Daniel Kingma informed them that he had been on the property but had been told by Dale Kingma he could go on the property to get his golf clubs.  Daniel Kingma told the Deputies that he only went on the property when he was told he could go on the property.

CP at 72-73.

A jury found Daniel guilty of unlawful possession of methamphetamine.

## ANALYSIS

Daniel argues that his arrest violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution because Corporal Mansford lacked probable cause to arrest him.  Specifically, he contends that (1) information in the Spillman database was unreliable and (2) additional investigation was required to establish whether Daniel was on his father's property for a legitimate purpose.

5

Accordingly, he argues that the trial court should have suppressed the methamphetamine seized during the search incident to arrest.

In reviewing the denial of a motion to suppress, we must determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Police may conduct a warrantless search incident to arrest as long as there is probable cause to arrest at the time of the search. *State v. O'Neill*, 104 Wn. App. 850, 868-69, 17 P.3d 682 (2001). Probable cause exists where the facts and circumstances known to the arresting officer are sufficiently trustworthy to cause a reasonable officer to believe that an offense has been committed. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007).

Daniel first assigns error to the trial court's disputed findings of fact 2.12 to 2.18. However, in footnotes, he devotes argument only to findings 2.13, 2.14, 2.16, and 2.18, contending there is no testimony to support findings of fact 2.13, 2.14, and 2.16, and that finding of fact 2.18 omits the word "invited" in summarizing Corporal Mansford's testimony. Regarding the remaining findings, 2.12, 2.15, and 2.17, Daniel does not

provide specific argument as required by RAP 10.3(a)(6). Accordingly, we treat the

findings as verities on appeal. *State v. Motherwell*, 114 Wn.2d 353, 358 n.3, 788 P.2d

1066 (1990).

We find substantial evidence supports the challenged findings. First, findings of

fact 2.13 and 2.14 are supported by Corporal Mansford's following testimony:

> Dale Kingma had explained to me that his son Daniel had been trespassing
> on the property. He had arrived there to get some golf clubs, had come onto
> the property and wanted to fight his dad...
>
> [Dale] took a photograph of Daniel as he was getting more and more
> aggressive, agitated. He stepped back, took a – took a photograph of – of
> Daniel, and – called MAC dispatch.

RP at 42.

Finding of fact 2.16 is supported by Corporal Mansford's testimony that dispatch

confirmed that Deputy Delarosa had trespassed Daniel from his father's property on October

6, 2013. As to finding 2.18, we find it immaterial that the court failed to use the word

"invited" in summarizing Corporal Mansford's testimony. The finding adequately reflects

that Daniel told law enforcement officers that his father invited him onto the property.

The court's findings, in turn, support the conclusion that Corporal Mansford had

probable cause to arrest Daniel for criminal trespass. To recap the findings; (1) Corporal

Mansford had been to Dale's property on previous trespass calls involving Daniel, (2)

Dale stated that Daniel was trespassed from his property and that Daniel had entered the property in an agitated and aggressive state, (3) dispatch confirmed that Daniel had been trespassed from his father's property, (4) Dale showed Corporal Mansford a photo of Daniel on his property, and (5) Dale provided a written statement, asserting that Daniel trespassed on his property on October 14, 2013. Taken together, these facts would lead a reasonable officer to conclude that Daniel was trespassing.

Daniel's arguments to the contrary are not convincing. He asserts that Corporal Mansford did not have probable cause to arrest him because the information in the Spillman database was unreliable and Corporal Mansford improperly assumed Daniel had been given legally sufficient notice of the trespass. This argument misses the mark. Even if the information in the Spillman database was incorrect, the probable cause determination stands. Probable cause turns on what the arresting officer knew at the time of the arrest. This information must be "reasonably trustworthy." *State v. Conner*, 58 Wn. App. 90, 97-98, 791 P.2d 261 (1990). We do not evaluate probable cause in a hypertechnical manner. *State v. Remboldt*, 64 Wn. App. 505, 510, 827 P.2d 282 (1992).

Corporal Mansford had no reason to doubt the reliability of the information provided by dispatch. In the absence of circumstances indicating the report was unreliable, the information was "reasonably trustworthy" and Corporal Mansford properly

8

relied on it in forming probable cause. *Conner*, 58 Wn. App. at 97-98. Moreover, in evaluating probable cause, we consider the *totality* of the known suspicious circumstances. *State v. Terranova*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). Thus, even if we were to conclude that the facts of the Spillman notice were unreliable, the other facts, detailed above, adequately established probable cause.

Next, citing *State v. Blair*, 65 Wn. App. 64, 827 P.2d 356 (1992), Daniel asserts that Corporal Mansford should have conducted additional investigation to determine whether Daniel was on the property for a legitimate purpose. We disagree. Although Washington provides an affirmative defense to criminal trespass if "[t]he actor reasonably believed that the owner of the premises . . . would have licensed him or her to enter or remain," it is well settled that officers are not required to weigh affirmative defenses. RCW 9A.52.090(3); *State v. Fry*, 168 Wn.2d 1, 8, 10, 228 P.3d 1 (2010); *McBride v. Walla Walla County*, 95 Wn. App. 33, 40, 975 P.2d 1029 (1999). Thus, in this case, whether Daniel believed he had permission to be on Dale's property is irrelevant to the issue of probable cause.

*Blair*, the case on which Daniel relies, does not compel a different result. *Blair* involved an agreement between the Seattle Police Department and the Seattle Housing Authority authorizing the police department to warn and arrest anyone trespassing on the

premises of a public housing complex. The officer in that case testified that the

agreement allowed him to "admonish" any person whom he believed had engaged in

illegal activity or who had been arrested on the premises of the housing complex. *Blair*,

65 Wn. App. at 66. The officer admonishes the person not to return to the complex or he

or she will be arrested for trespassing.

The officer stopped Blair as he was walking into the housing complex and arrested

him for trespassing without investigating Blair's statement that he was visiting a friend.

In arresting Blair, the officer relied solely on the fact that he had previously instructed

Blair not to enter the complex when the officer had arrested Blair in a nearby parking lot

for drug activity. Division One of this court held that although the officer had an

articulable suspicion that Blair was trespassing, "the fact that the officer had told Blair not

to return to the premises *does not, in itself,* create probable cause for arresting him on the

charge of criminal trespass." *Id.* at 70 (emphasis added).

The facts here are markedly distinguishable. In addition to the information that

Officer Delarosa had trespassed Daniel from the property, Dale informed Corporal

Mansford that Daniel had trespassed on his property on the day in question. A logical

inference from Dale's statement was that Daniel was not invited or otherwise privileged to

be on the property. Additionally, *Blair* predates *McBride* and *Fry* and did not analyze

10

whether the affirmative defense negates probable cause. "In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised." *In re Electric Lightware, Inc.*, 123 Wn.2d 530, 541, 869 P.2d 1045 (1994).

In both *McBride* and *Fry*, the arresting officers had substantial facts and information to support the respective potential affirmative defenses. Nevertheless, both cases hold that an officer is not required to determine whether the affirmative defense is met. *Fry,* 168 Wn.2d at 8; *McBride*, 95 Wn. App. at 40. Here, Corporal Mansford had a legal foundation for the arrest based on probable cause. Under well settled precedent, he was not required to dispel every explanation or hold a quasi-trial to determine whether Daniel was invited onto the property. We therefore affirm the trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____ _____
Brown, J.            Siddoway, C.J.