

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36295-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER LEE MURPHY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Christopher Murphy appeals his conviction for second degree unlawful possession of a firearm. He argues the firearm should have been suppressed as the fruit of an unlawful seizure. We disagree and affirm.

## FACTS[1]

Richland police responded to a Motel 6 after a clerk called 911. The clerk reported a man and woman were refusing to leave the property after being denied a room. The pair was associated with a distinctive pickup truck pulling a flatbed trailer. By the time the police arrived, the man and woman were no longer at the motel. However, their truck was observed across the street in a parking lot. Officers went to make contact.

---

[1] The following facts are taken from the suppression hearing in Mr. Murphy's case and the trial court's factual findings. Mr. Murphy has not challenged the court's findings. They are thus deemed verities on appeal. *State v. Tamblyn*, 167 Wn. App. 332, 336-37, 273 P.3d 459 (2012).

As law enforcement approached, the man from the truck started walking toward the officers in an aggressive manner. The man was wearing baggy clothes and his hands were in his pockets. Officers tried to keep their distance. The man was instructed to stop and to keep his hands out of his pockets. The man stopped, but continued to move his hands in and out of his pockets. The man was asked for his name and he stated he was Christopher Murphy. At some point, the motel clerk called back to 911 and reported the police were talking to the right person.

Officers ran Mr. Murphy's name through dispatch. They discovered he had no warrants, but his driver's license was suspended and he had a prior felony conviction rendering him ineligible to possess firearms. Officers began talking to Mr. Murphy about the Motel 6 incident and other subjects, including his truck. Officers believed the truck was similar to a suspicious vehicle reported the evening before, and possibly stolen. Various items in the truck bed and an attached trailer were suggestive of stolen property. During the interaction with the officers, Mr. Murphy was fidgety and continued to dig around in his pockets despite repeated instructions to keep his hands out.

Mr. Murphy's repeated behavior of placing his hands in his pockets caused the officers to be concerned for their safety. Mr. Murphy was advised that if he continued to disobey instructions to keep his hands visible, he would be handcuffed. Mr. Murphy did not heed this warning. Officers then placed Mr. Murphy in handcuffs and performed a

2

pat-down search. This search occurred approximately 19 minutes after the initial police contact. The pat-down uncovered a firearm and Mr. Murphy was arrested for unlawful possession of a firearm. The State later filed charges.

Prior to trial, Mr. Murphy filed a motion to suppress the firearm evidence, arguing the firearm had been unlawfully seized. The parties agreed Mr. Murphy "was detained and was not free to leave within seconds of the initial contact" with the officers. Clerk's Papers at 53. The issue, therefore, was whether the 911 call and Mr. Murphy's initial reaction to law enforcement was sufficient to justify a seizure.

The trial court denied Mr. Murphy's suppression motion. It held that reasonable suspicion justified the initial police stop. In addition, Mr. Murphy's continued noncompliance with instructions and suspicious behavior provided adequate grounds for prolonging the scope of the stop. The court subsequently found Mr. Murphy guilty of unlawful firearm possession at a stipulated facts bench trial.

Mr. Murphy timely appeals.

ANALYSIS

*Initial seizure*

Mr. Murphy contends he was illegally seized because officers lacked reasonable suspicion that he committed trespass, or any other crime, at the Motel 6. We disagree.

3

Law enforcement may perform warrantless stops when faced with reasonable suspicion that a person "has been or is about to be involved in a crime." *State v. Acrey*, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). Reasonable suspicion can be supported by an informant's tip, so long as it is reliable under the circumstances. *State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015). A known citizen informant calling 911 to report contemporaneous events is generally considered truthful. *Navarette v. California*, 572 U.S. 393, 399-400, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014).

Mr. Murphy does not challenge the truthfulness of the motel clerk's tip. He instead argues the contents of the tip were insufficient to support an apparent crime of trespass. *See State v. Sieler*, 95 Wn.2d 43, 621 P.2d 1272 (1980). We disagree. The motel clerk did not simply report that Mr. Murphy and his companion failed to leave. She clarified Mr. Murphy refused to leave after being asked to do so "several times." Report of Proceedings (RP) (Aug. 2, 2018) at 6. Dispatch relayed this information to the responding officers by noting Mr. Murphy was refusing to leave. These circumstances were sufficient to create reasonable suspicion of trespass. RCW 9A.52.080 (trespass includes unlawful entry or remaining on the premises of another); *State v. Kutch*, 90 Wn. App. 244, 247, 951 P.2d 1139 (1998) (authorized person may revoke an individual's license to remain in a building that is otherwise open to the public). The police did not need to investigate a

4

possible defense to trespass before performing a stop. *State v. Guzman-Cuellar*, 47 Wn. App. 326, 331, 734 P.2d 966 (1987).

*Scope of investigation*

Mr. Murphy also appears to claim the officers improperly expanded the scope of their investigation to include criminal activity other than trespass.[2] The State contends the officers appropriately expanded their investigation due to Mr. Murphy's suspicious behavior, the appearance of the truck and trailer, and the brevity of the investigation. We agree with the State.

A stop may be prolonged when interaction with a suspect "'arouses further suspicions.'" *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975 (1990) (quoting *Guzman-Cuellar*, 47 Wn. App. at 332). That is what happened here. Although officers initially sought contact with Mr. Murphy in response to a fairly minor offense, Mr. Murphy's behavior quickly aroused suspicions that something more serious was afoot. Mr. Murphy's aggressive conduct, and noncompliance with instructions to keep his hands out of his pockets, raised a reasonable concern that he was armed and posed a current danger. *See State v. Williams*, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984).

---

[2] Mr. Murphy's brief focuses almost entirely on whether there was an initial basis for the stop. He does not specifically argue that, even if the stop was warranted at the outset, officers exceeded the proper scope.

Nineteen minutes was not a particularly long period of detention, s*ee id.* at 741 n.4, particularly given Mr. Murphy's failure to provide consistent information about what happened at the Motel 6. Indeed, Mr. Murphy's companion testified she felt it was only a "couple minutes" before Mr. Murphy was handcuffed. RP (Aug. 2, 2018) at 21. Given the totality of the circumstances, law enforcement had sufficient justification for detaining Mr. Murphy up through the pat-down search and seizure of the firearm.

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.