[No. 13631-7-II.  Division Two.  January 15, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD EUGENE VANDOVER, *Appellant*.

*John F. Hayden* of *Clallam-Jefferson Public Defender Association,* for appellant (appointed counsel for appeal).

*David Bruneau, Prosecuting Attorney,* and *Deborah S. Kelly, Deputy,* for respondent.

PETRICH, C.J. — Donald Vandover appeals his conviction of the crime of unlawful possession of a controlled substance with intent to deliver. He argues that his conviction should be overturned because the arresting officers discovered the cocaine following an unlawful investigatory stop. Mr. Vandover's motion to suppress the evidence was denied following a suppression hearing held pursuant to CrR 3.6. The appellant was found guilty by the trial judge after a bench trial held on stipulated facts. We reverse.

At about 9:52 p.m. on April 13, 1989, Officers Thomas and Schilke of the Port Angeles Police Department responded to a radio report that "a man in a gold colored Maverick was brandishing a sawed-off shotgun" in front of a restaurant in downtown Port Angeles. This report was issued in response to an anonymous telephone tip. The record did not indicate whether the informant's tip was based on an eyewitness account.

Both officers, traveling in separate vehicles, arrived at the restaurant and spotted the appellant getting into a green Maverick. The green Maverick drove away and the police officers continued to look for a gold Maverick. Some time later, Officer Thomas spotted the green Maverick and proceeded to follow it with the intention of pulling it over. The officer then turned on his emergency lights, the Maverick came to a stop, and the defendant came out of his car and began walking back to meet the police officer. Officer Thomas told Vandover about the anonymous report that a man with a gold Maverick was brandishing a sawed-off shotgun in downtown Port Angeles. When asked if he had a shotgun in his car Vandover replied that he had a friend's shotgun in the trunk of the Maverick. He opened the trunk at the officer's request and the officer spotted a full-size 12-gauge shotgun covered with a gray denim jacket. After directing Vandover to stand away from the vehicle, the officer discovered that the weapon was loaded.

Officer Schilke, who arrived at the scene later, looked into the car and spotted what appeared to be a firearm sticking out from under the seat. He then opened the car door, reached under the seat, and pulled out a handgun. Vandover was placed under arrest and Officer Schilke searched the rest of the car. During the course of this search he discovered 11 folded paper bindles containing what was later determined to be 13 grams of cocaine.

At a pretrial suppression hearing, the court held that the detention was justified because it was based on a reasonable suspicion of criminal activity and therefore the evidence gathered incident to it was admissible.

### INVESTIGATORY DETENTION

The appellant argues that the initial stop by Officer Thomas was unlawful, thus the arrest was unlawful and all of the evidence subsequently gathered was inadmissible. Under the fourth amendment to the United States Constitution, which proscribes unreasonable searches and seizures, an investigatory stop is unlawful where the stop constitutes

a seizure and the stop is not based on a reasonable suspicion of criminal conduct. *State v. Larson*, 93 Wn.2d 638, 611 P.2d 771 (1980); *State v. Stroud*, 30 Wn. App. 392, 396-97, 634 P.2d 316 (1981), *review denied*, 96 Wn.2d 1025 (1982). A seizure takes place where, under the totality of the circumstances, a reasonable person would not consider departure a realistic alternative. *United States v. Palmer*, 603 F.2d 1286, 1289 (8th Cir. 1979). A seizure occurred when Officer Thomas turned on the emergency lights with the intent of pulling Vandover over and in response Vandover stopped. *State v. Stroud*, *supra* at 396 (under totality of circumstances the use of emergency lights by the police "constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative"); *State v. DeArman*, 54 Wn. App. 621, 624, 774 P.2d 1247 (1989) (use of emergency lights by a police officer constitutes a seizure of the motorist).

The remaining question is whether this seizure was reasonable. A seizure is reasonable only if an officer has a "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); *Larson*, at 644. A number of Washington cases have dealt specifically with the situation presented by the case at bench; namely, whether an anonymous informant's tip is sufficient to establish a reasonable suspicion of criminal conduct.

In *State v. Lesnick*, 84 Wn.2d 940, 941, 530 P.2d 243, *cert. denied*, 423 U.S. 891, 46 L. Ed. 2d 122, 96 S. Ct. 187 (1975), the Washington Supreme Court considered a case where an anonymous caller informed the police that a van with a certain license plate number was carrying illegal gambling equipment. *Lesnick*, at 941. The police followed the van for a block and a half and pulled it over, even though the driver of the van committed no traffic violations and there were no other indications of criminal activity. *Lesnick*, at 942. The court held that in order for an investigative stop to be reasonable based on information supplied

by another person, the informant's tip must demonstrate some indicia of reliability. *Lesnick*, at 943. This anonymous tip was deemed insufficient to establish a well-founded suspicion. *State v. Lesnick, supra.* The Supreme Court in *Lesnick* quoted the appellate court's opinion in the same case with approval:

> While the police may have a duty to investigate tips which sound reasonable, absent circumstances suggesting the informant's reliability, or some corroborative observation which suggests either the presence of criminal activity or that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

*Lesnick*, at 944 (quoting *State v. Lesnick*, 10 Wn. App. 281, 285, 518 P.2d 199 (1973)). The *Lesnick* court held that the evidence obtained should have been suppressed because there was nothing tending to demonstrate that the informant was reliable or that the informant obtained the information in a reliable fashion.

The principles set out in *Lesnick* were applied in *Campbell v. Department of Licensing*, 31 Wn. App. 833, 835, 644 P.2d 1219 (1982), where a driver appealed the revocation of his license by the Department of Licensing, contending that the arresting officer did not have a reasonable suspicion to make the initial stop. The arresting officer stopped Mr. Campbell after a motorist had pulled up beside his police vehicle, announced that a drunk driver was traveling in the opposite direction, and gave a description of the car. *Campbell*, at 834. The officer stopped Mr. Campbell after following him for some distance without observing any indication of Mr. Campbell's drunkenness.

The *Campbell* court stated that in order for an informant's uncorroborated tip to validly form the sole basis for an investigatory stop and detention, it must possess sufficient indicia of reliability. *Campbell*, at 835; *see also State v. Sieler*, 95 Wn.2d 43, 47, 621 P.2d 1272 (1980). In finding that the motorist's tip was not reliable, the *Campbell* court observed that there was no factual information provided by the passing motorist that would enable the

police officer to assess the probable accuracy of the motorist's conclusion. *Campbell*, at 836. In other words, the police officer had no way of knowing whether there was any basis for the informant's personal knowledge.

The rationale behind the requirement of an apparent basis for the informant's personal knowledge was articulated by LaFave in his treatise on search and seizure:

> It makes no sense to require some "indicia of reliability" that the informer is personally reliable but nothing at all concerning the source of his information, considering that one possible source would be another person who was totally unreliable.

3 W. LaFave, *Search and Seizure* § 9.3(e), at 481 (2d ed. 1987). In response to the contention that anonymous tips should be assumed to be eyewitness accounts, LaFave argues

> there is simply no established need to go to this extreme; as Justice White once observed, "if it may be so easily inferred * * * that the informant has himself observed the facts or has them from an actor in the event, no possible harm could come from requiring a statement to that effect."

3 W. LaFave, *supra* at 481 (quoting Justice White's concurring opinion in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)). We agree that establishing the basis for the informant's knowledge is vital in establishing the reliability of the tip on which the reasonableness of the investigatory stop depends.

There was no indication on the record whether the anonymous informant in the case at bench was an eyewitness to the event described. During the suppression hearing the informant remained anonymous. The police dispatcher did not testify as to the substance of the tip, and the police officers testified that they were only aware that the tip was anonymous.[1] The record is completely devoid of any

---

[1]The State may have conceivably argued that the arresting officer was justified in arresting Vandover because he did so based on information received through police channels. However information obtained "via police channels" does not justify a stop unless the police officer, in this case the dispatcher, possessed a reasonable suspicion justifying the stop. 3 W. LaFave, *supra* at 489; *United States v. Hensley*, 469 U.S. 221, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985).

evidence as to what the basis of the anonymous tipster's knowledge was, nor does it contain any evidence showing that this basis was otherwise reliable.

Not only was there no apparent basis for the informant's knowledge, there were no other indicia of reliability. The police officers made no corroborative observations pointing to the existence of criminal activity. Additionally, the details of the informant's tip did not match what the police actually observed. It is clear that neither the basis of the informant's knowledge nor the surrounding circumstances demonstrated that the anonymous tip in this case was reliable.

The State attempted to justify the investigatory stop and detention of Mr. Vandover on the grounds that under *State v. Franklin*, 41 Wn. App. 409, 704 P.2d 666 (1985), the potential danger to the public may be a factor making an investigatory stop more reasonable. Although the *Franklin* court did cite potential danger to the public as one of the factors in its decision that the investigatory detention was reasonable, in *Franklin* the informant was clearly an eyewitness and the officer immediately corroborated the details of the tip. *Franklin*, at 413-14. *Franklin* does not stand for the proposition that potential danger to the public is a substitute for a reliable informant. *See Campbell*, at 837. Rather, it is clear that under *Franklin*, danger posed to the public is a factor which may make an investigatory stop reasonable under the circumstances where there are already indications that the informant's tip was reliable.

Although the tip in the case at bench did indicate that there may have been a danger posed to the public by a person wielding a shotgun, there is no reason to believe that the informant's tip was reliable. We therefore hold that the investigatory stop and arrest of Vandover was unreasonable, and the evidence seized as a result of this detention should have been suppressed. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). In light of our holding in this case, we need not address the challenge to the exceptional sentence.

Reversed.

ALEXANDER, J., and WORSWICK, J. Pro Tem., concur.

Reconsideration denied April 3, 1992.

Review denied at 120 Wn.2d 1018 (1992).