IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37160-3-III |
| | ) | (consolidated w/ |
| Respondent, | ) | No. 37220-1-III) |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CHRISTOPHER R. MORRELL, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Informants are an important source of police intelligence. But criminal informants are less reliable than citizen informants. When a criminal informant implicates another person in a crime, law enforcement must be assured the quality of information outweighs the informant's motive to lie. If a criminal informant's tip is not inherently robust, independent corroboration is required before the police can use the tip to infringe on a suspect's constitutional rights.

Police stopped Christopher Morrell's vehicle after a criminal informant fingered him as her drug supplier. Although the informant was not anonymous and her information technically included a statement against interest, the informant's allegation was not

inherently credible. The informant did not confess to any criminal behavior beyond what was obvious at the time of her arrest. In addition, her claim that Mr. Morrell was her drug supplier was not readily amenable to verification or refutation. Given the doubtful quality of the informant's tip, the police needed corroboration before they could rely on it to impinge Mr. Morrell's right to be free from warrantless seizure and search. Unfortunately, this did not occur. The police therefore lacked authority to execute an investigatory stop of Mr. Morrell's vehicle. All evidence tied to the stop must be suppressed. This matter is reversed.

## BACKGROUND

Late in the evening of August 9, 2017, Spokane Police Department officers, including Officer Scott Lesser, arrested a woman named Ashley Ansbaugh on an outstanding warrant. During a search incident to arrest, officers discovered methamphetamine and heroin on Ms. Ansbaugh's person. Unsolicited, Ms. Ansbaugh told the officers she had just purchased the drugs from Christopher Morrell, who used the nickname "Duffles." Report of Proceedings (Jun. 13, 2019) at 8. Ms. Ansbaugh said Mr. Morell drove a maroon Chevrolet Monte Carlo, he still had drugs on him, and he would be driving to her hotel room with more drugs. Officer Lesser was familiar with Mr. Morrell and his nickname from prior contacts, including a past drug investigation.

Officer Lesser remained on patrol the morning after Ms. Ansbaugh's arrest. At some point, he saw Mr. Morrell driving a maroon Monte Carlo near a gas station. There is no indication the gas station was near a hotel. Intending to investigate Ms. Ansbaugh's tip, Officer Lesser performed a traffic stop after following Mr. Morrell for several miles. Officer Lesser ordered Mr. Morrell out of the vehicle and frisked him for weapons.

Mr. Morrell's car door was left open during the traffic stop and frisk. Officer Lesser was able to observe the interior of the car with the help of a flashlight. The officer noticed several large air fresheners, which he knew were commonly used to mask the smell of heroin. He also saw a crystal substance and sandwich bags. The sandwich bags were similar to ones containing the drugs found in Ms. Ansbaugh's possession. Finally, Officer Lesser saw a blue case oddly placed underneath the passenger seat of the vehicle.

Officer Lesser obtained a search warrant for Mr. Morrell's person and the Monte Carlo. In Mr. Morrell's pocket, Officer Lesser found $246 in cash. In the blue case, he discovered additional sandwich bags containing methamphetamine and heroin. Two scales with methamphetamine residue were found in the case and center console. The quantities of methamphetamine and heroin recovered suggested drug trafficking. Officer Lesser also seized two cell phones from the vehicle. Officer Lesser then released Mr. Morrell in the hopes he would cooperate with the police in locating other drug dealers.

Later that day, Officer Lesser obtained a search warrant for the two phones. Execution of the warrant revealed Facebook and text messages implicating Mr. Morrell in drug transactions. At some point, it appears a warrant was issued for Mr. Morrell's arrest.

On September 28, 2017, Officer Lesser spotted Mr. Morrell driving a tan GMC Yukon. Officer Lesser stopped the vehicle and arrested Mr. Morrell. During this process, Officer Lesser saw a crystal substance on the driver's seat of the vehicle. A narcotics dog was summoned, which alerted the officers to the presence of narcotics in the vehicle. Another search warrant was obtained. Upon executing the warrant, Officer Lesser discovered methamphetamine, heroin, drug scales with drug residue, sandwich bags and packaging, and $157 in cash. Mr. Morrell was then arrested for both the August and September incidents.

The State charged Mr. Morrell with drug offenses associated with the two vehicle searches. Mr. Morrell filed an unsuccessful motion to suppress. A jury subsequently convicted Mr. Morrell of four counts of possession of a controlled substance with intent to deliver. The trial court sentenced Mr. Morrell to 90 months in prison followed by a year of community custody.

Mr. Morrell now appeals.

ANALYSIS

The dispositive issue on appeal is whether Ms. Ansbaugh's tip supplied reasonable suspicion for an investigatory traffic stop. If it did not, all evidence seized by the State during both traffic stops must be suppressed under the fruit of the poisonous tree doctrine. Our analysis of this issue is de novo. *State v. McReynolds*, 117 Wn. App. 309, 328, 71 P.3d 663 (2003) (citing *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)).

Article I, section 7 of the Washington State Constitution provides "[n]o person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." This provision is generally applied consistently with the Fourth Amendment to the United States Constitution in the context of investigatory stops. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). "However, because article I, section 7 provides for broader privacy protections than the Fourth Amendment, our state constitution generally requires a stronger showing by the State." *Id*. at 618. Warrantless seizures are presumed to be unreasonable, and the State bears the burden of showing a warrantless seizure fell into an exception to the warrant requirement. *Id*. at 617.

An exception to the warrant requirement "is a brief investigatory detention . . . known as a *Terry*[1] stop." *Id.* "For a *Terry* stop to be permissible, the State must show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *Id.* (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)). Reasonable suspicion requires an investigating officer have "'specific and articulable facts'" based on the totality of the circumstances. *Id.* at 617 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991) (quoting same).

Officer Lesser's interaction with Mr. Morrell on the morning of August 10, 2017, began as a warrantless *Terry* stop. It was based on the information supplied by Ms. Ansbaugh, coupled with Officer Lesser's independent confirmation of Mr. Morrell's nickname and vehicle type. The question we must decide, therefore, is whether this level of information was sufficient to constitute reasonable suspicion.

Although reasonable suspicion requires less than probable cause for an arrest, an informant's tip alleging criminal activity is not always sufficient to satisfy reasonable suspicion. Instead, the State must show the "tip bears some 'indicia of reliability' under the totality of the circumstances." *Z.U.E.*, 183 Wn.2d at 618. "[T]here [must] either be

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." *Id.*

An informant's reliability turns on their credibility and basis of knowledge. In some cases, one of the two factors is more important than the other. Here, there are no questions about Ms. Ansbaugh's basis of knowledge. Ms. Ansbaugh was not reporting some sort of suspicious activity that might have been criminal; she claimed Mr. Morrell sold her drugs. The only question is whether Ms. Ansbaugh was a credible source of information.

Several factors can enhance an informant's credibility. A named informant is deemed more reliable than an anonymous one. The reasoning is that a named informant risks criminal prosecution for supplying false information, but an anonymous informant does not take this gamble. *See id.* at 621. Additionally, our case law holds an informant is more credible if they make a statement against penal interest. *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984). "Since one who admits criminal activity to a police officer faces possible prosecution, it is generally held to be a reasonable inference that a statement raising such a possibility is a credible one." *State v. Lair*, 95 Wn.2d 706, 710, 630 P.2d 427 (1981).

While Ms. Ansbaugh was a named informant and she made a statement implicating her penal interests, her credibility remained suspect because she was a criminal informant. Unlike a citizen informant calling 911, a criminal informant is not presumed to be acting out of civic responsibility. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.3 at 129 n.6 (6th ed. 2020) (quoting Michael A. Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards*, 81 Yale L.J. 703, 712-13 (1972)). Instead, the criminal informant's motives may "include offers of immunity or sentence reduction in exchange for cooperation, promises of money payments . . . and such perverse motives as revenge or the hope of eliminating criminal competition." 2 LAFAVE, *supra*. Experience and common sense dictate that a criminal informant cannot be deemed equally credible as a citizen informant. Additional indicia of veracity are required.

A statement against interest can help establish a criminal informant's credibility, but not always. "It must be remembered . . . that the admission against penal interest is used to determine the *trustworthiness* of the informant's information." *Lair*, 95 Wn.2d at 711. Not all statements against interest are equal. The real question is not whether the informant has technically made a statement against interest, but whether the statement against interest was made under circumstances suggestive of reliability. *See* 2 LAFAVE,

*supra*, § 3.3(c) at 167 ("Courts thus should not utilize the admission-against-penal-interest concept in a blunderbuss fashion, but instead should assess in a more careful fashion, preferably upon a full disclosure by the police of all relevant circumstances, what the significance of that admission is in the context of the particular case."). For example, an informant's statement to law enforcement that can be readily verified or refuted may be deemed credible on the theory that lying would only deepen the informant's criminal troubles. *State v. O'Connor*, 39 Wn. App. 113, 121, 692 P.2d 208 (1984). But a statement that largely defies the possibility of contradiction carries little weight. "For example, if the police apprehended a person for possession of drugs and [they] were then to admit to purchases from various named sources in the recent past, there would be cause for skepticism." 2 LAFAVE, *supra*, § 3.3(c) at 175.

Ms. Ansbaugh's statement to police was not the type of statement against interest that carried an aura of reliability. Given she was caught red-handed, Ms. Ansbaugh's willingness to admit to drug possession was not particularly impressive. In addition, the information supplied by Ms. Ansbaugh was not amenable to being either refuted or verified. Had Officer Lesser stopped Mr. Morrell and not found drugs, this would not mean Ms. Ansbaugh was lying. As someone involved in drug activity, Ms. Ansbaugh likely knew of various individuals involved in drugs. When caught, rather than give up

9

the name of her true supplier, Ms. Ansbaugh could just as easily (if not more likely) have thrown out the name of someone she believed was involved in drugs through rumor or reputation.

Because Ms. Ansbaugh's tip was not sufficiently robust to carry an aura of reliability, law enforcement was required to corroborate her claims prior to conducting a warrantless stop. *Z.U.E.*, 183 Wn.2d at 618. "[C]orroborative observations do not need to be of particularly blatant criminal activity, but they must corroborate more than just innocuous facts, such as an individual's appearance or clothing." *Z.U.E.*, 183 Wn.2d at 618-19.

The facts here do not show corroboration. The only information verified by police was Ms. Ansbaugh's knowledge of Mr. Morrell's nickname and car and the general allegation that he was involved with drugs. These are facts that would be known to anyone familiar with Mr. Morrell through rumor or reputation. *Jackson*, 102 Wn.2d at 438. The police could have tried to corroborate Ms. Ansbaugh's specific information by following up on her claim that he would be returning to her hotel with drugs, but they did not do so. Instead, Officer Lesser simply stopped Mr. Morrell after he saw him driving near a gas station. At that point in time, Officer Lesser lacked sufficient basis for an investigative stop.

All the drug evidence used against Mr. Morrell at trial was proximately connected to Officer Lesser's initial traffic stop. This is obviously true for the search of the Monte Carlo, which was based on contraband observed by Officer Lesser during the stop. But the later stop and search of the Yukon also had a direct causal connection. That stop was based on a warrant issued against Mr. Morrell for the drugs seized from the Monte Carlo. No separate, unforeseeable act, severed the causal connection between Mr. Morrell's initial unlawful detention and the two vehicle searches. As a result, evidence seized in the searches must be suppressed. *State v. Mayfield*, 192 Wn.2d 871, 898, 434 P.3d 58 (2019).[2]

## CONCLUSION

The judgments of conviction are reversed. This matter is remanded with instructions to grant Mr. Morrell's motion to suppress.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____, J.          _____, J.
Fearing, J.                        Lawrence-Berrey, J.

---

[2] The scope of this ruling includes the cell phones seized from the Monte Carlo.

11