IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF WENATCHEE, | ) | No. 38981-2-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANK E. STEARNS, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Following his arrest for, among other offenses, driving while under the influence of intoxicating liquor (DUI), Frank Stearns moved to suppress evidence obtained from the traffic stop, arguing that the citizen informant's tip was not sufficiently reliable nor was it corroborated by law enforcement. The district court denied the motion and, after a bench trial, convicted Mr. Stearns of three crimes. On appeal, the superior court reversed, concluding the circumstances did not establish the informant's reliability and the informant's report was not corroborated. Pursuant to RAP 2.3(d)(1), we granted the City of Wenatchee's (City) motion for discretionary review. We affirm the superior court's order that reversed the district court's denial of Mr. Stearns's suppression motion.

## FACTS

On July 12, 2019, at approximately 6:39 p.m., Officer Natalie BrinJones of the Wenatchee Police Department was dispatched to the parking lot of Cascade Motorsports.

An individual, who identified himself as David Gilliver, had called 911 to report that he saw a man staggering through the parking lot. Mr. Gilliver advised that the staggering man got into a black pickup truck and moved it within the parking lot. Mr. Gilliver believed the man was intoxicated. Mr. Gilliver had described the staggering individual as a white male in his mid-thirties wearing sunglasses, a gray hat, a blue shirt, and jeans.

When Officer BrinJones arrived at the Cascade Motorsports parking lot, she encountered a man standing next to a black truck. The man pointed to another black truck in the parking lot and said something like, "That's him! He's wasted!" Clerk's Papers (CP) at 17; Rep. of Proc. (RP) (Sept. 19, 2019) at 48. Officer BrinJones did not know Mr. Gilliver and failed to verify he was the individual she encountered in the parking lot. Officer BrinJones could only speculate that the individual pointing to the black truck must have been the person who called in the tip because "he was standing there on the phone." RP (Sept. 19, 2019) at 68. Officer BrinJones believed this man was "shocked" and "wanted" her "to go take action." RP (Sept. 19, 2019) at 60.

Officer BrinJones could see the driver of the black truck through the rolled-down driver's side window. She observed that the driver—later identified as Frank Stearns—was a white male wearing a gray hat, sunglasses, and a blue shirt, which she noted

matched the physical description provided by Mr. Gilliver. Officer BrinJones did not

observe Mr. Stearns staggering.

Based on Mr. Gilliver's description of him "staggering," Officer BrinJones felt

she needed to do her "due diligence to observe him and see if this man was impaired."

RP (Sept. 19, 2019) at 67. Officer BrinJones believed that the informant's tip was

insufficient to seize Mr. Stearns and that she needed to observe Mr. Stearns's driving to

corroborate Mr. Gilliver's assumption that Mr. Stearns was impaired.

Officer BrinJones attempted to position her vehicle behind Mr. Stearns's truck but

due to heavy traffic, when she pulled out of the parking lot onto Worthen Street, there

were approximately four cars between her vehicle and the truck. Mr. Stearns's vehicle, as

well as the four cars between Officer BrinJones and Mr. Stearns, each had to stop at a

four-way stop at the intersection of Worthen Street and Orondo Avenue, a process that

allowed Mr. Stearns to put more distance between himself and Officer BrinJones. As

Officer BrinJones followed Mr. Stearns, she saw his truck "drift toward[ ] the centerline"

but, due to her distance, she could not tell if the truck touched or crossed the centerline.

RP (Sept. 19, 2019) at 53.

Around the same time, Officer BrinJones suspected the truck may have been

traveling faster than the posted speed limit. She had been driving "near" the speed limit,

3

yet she perceived the truck as pulling away from her. Officer BrinJones's patrol vehicle lacked a radar speed measurement device. The only means for Officer BrinJones to measure the speed of another vehicle was by pacing the other vehicle. Officer BrinJones did not pace Mr. Stearns's truck, so she could not validate her hunch that he was exceeding the posted speed limit.

In the hopes of obtaining a better vantage point, Officer BrinJones activated her emergency lights so she could pass the cars in front of her. She traveled at approximately 60 m.p.h. for about 20 seconds and caught up with the truck. As Officer BrinJones closed in on the truck, she deactivated her emergency lights and noted Mr. Stearns was traveling below the speed limit.

The truck then entered a roundabout at Fifth Street and Riverside Drive. As the truck exited the roundabout, Officer BrinJones believed the truck was going to strike a curb or cross the centerline. Her concerns were alleviated when, "at the very last second," the truck continued straight in what Officer BrinJones considered a jerky maneuver. RP (Sept. 19, 2019) at 56, 58, 65, 66; Ex. A at 0:37 sec. to 0:49 sec. Officer BrinJones did not witness any part of the truck touch or cross the centerline, nor did the vehicle strike the curb. Officer BrinJones later agreed that she did not consider Mr. Stearns's movements within his lane a sufficient basis to conduct a traffic stop.

4

Eventually, it appeared to Officer BrinJones that Mr. Stearns was preparing to pull over. As Mr. Stearns applied his brakes, Officer BrinJones noticed one of the brake lights was inoperable. Officer BrinJones then activated her emergency lights with the intent to initiate a traffic stop. Mr. Stearns responded by stopping his vehicle. Additional law enforcement officers arrived on scene to assist Officer BrinJones.

As a result of that traffic stop and seizure, law enforcement gathered more information that incriminated Mr. Stearns. First, a few moments after initially being stopped, Mr. Stearns attempted to evade Officer BrinJones by driving away, at which point he struck a curb. Mr. Stearns pulled over a second time and, during his interactions with the officers, exhibited signs of intoxication (i.e. slurred speech; watery, bloodshot, and droopy eyes; overwhelming odor of intoxicants; swaying while standing). Mr. Stearns subsequently provided a breath sample that revealed his breath alcohol concentration was greater than three times the legal limit. Law enforcement officers also suspected Mr. Stearns had a suspended driver's license and did not have a previously required ignition interlock device installed in his truck. Mr. Stearns was then taken into custody.

PROCEDURE

The City charged Mr. Stearns with DUI, failure to obey a police officer, operating a vehicle without an ignition interlock device, and third degree driving with a suspended license. Mr. Stearns moved to suppress all the evidence obtained as a result of the traffic stop, arguing that he was unlawfully seized because Mr. Gilliver's tip was not sufficiently reliable nor did Officer BrinJones corroborate the tip before initiating the traffic stop. Officer BrinJones testified at the suppression hearing as summarized above.

The district court denied Mr. Stearns's motion and the matter proceeded to a stipulated facts trial. At the conclusion of the trial, Mr. Stearns was convicted of DUI, failure to obey a police officer, and operating a vehicle without an ignition interlock device,[1] and was sentenced.

Mr. Stearns appealed to the superior court, arguing that "the trial court erred by denying [his] motion to suppress the traffic stop." CP at 1. The superior court reversed the district court's denial of Mr. Stearns's motion, concluding that the circumstances did not establish the informant's reliability and that law enforcement had failed to corroborate the informant's tip.

---

[1] The district court found Mr. Stearns not guilty of third degree driving with a suspended license.

6

The City moved in this court for discretionary review.  Pursuant to RAP 2.3(d)(1),

we granted review as to the superior court's determination that the informant was not

reliable and there was no corroboration.[2]  We affirm the superior court's order that

reversed the district court's denial of Mr. Stearns's suppression motion and remand to

district court for further proceedings.

## ANALYSIS

The City contends Mr. Gilliver's tip bore sufficient indicia of reliability because

Mr. Gilliver called 911, provided his name, and reported an eyewitness account of what

was occurring.  Alternatively, the City asserts that Officer BrinJones sufficiently

corroborated Mr. Gilliver's report as she independently witnessed Mr. Stearns's aberrant

driving.  The City further posits that Officer BrinJones should be granted latitude due to

the significant danger posed by impaired drivers.  We disagree with the City's assertions.

An aggrieved party may seek discretionary review of an appeal from a court of

limited jurisdiction.  RAP 2.3(d); RALJ 9.1(h).  In reviewing the district court's denial of

Mr. Stearns's suppression motion, the superior court was sitting in its appellate capacity.

*State v. Basson*, 105 Wn.2d 314, 317, 714 P.2d 1188 (1986).  This court reviews de novo

---

[2] We denied review as it related to the determination that the brake light violation
was not an actual, conscious, and independent basis for the stop.

the superior court's conclusions of law relating to the suppression of evidence. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002); *State v. Moore*, 178 Wn. App. 489, 497, 314 P.3d 1137 (2013).

Our state constitution provides that "[n]o person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." WASH. CONST. art. I, § 7. While application of this provision is generally consistent with that of the Fourth Amendment to the United States Constitution, the state provision "provides for broader privacy protections than" its federal counterpart, and "generally requires a stronger showing by the [government]." *State v. Z.U.E.*, 183 Wn.2d 610, 618, 352 P.3d 796 (2015). "Warrantless seizures are presumed to be unreasonable, and the State bears the burden of showing a warrantless seizure fell into an exception to the warrant requirement." *State v. Morrell*, 16 Wn. App. 2d 695, 701, 482 P.3d 295 (2021).

One such exception to the warrant requirement is for a brief investigatory detention known as a *Terry*[3] stop. *Id*. A *Terry* stop is justified only if a law enforcement officer has "'reasonable suspicion,'" defined as "'specific and articulable facts'" indicating that criminal activity is afoot. *Id*. (quoting *Z.U.E.*, 183 Wn.2d at 617); *see*

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*State v. Sieler*, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980). An officer's hunch alone does

not rise to the level of a reasonable suspicion. *State v. Doughty*, 170 Wn.2d 57, 63, 239

P.3d 573 (2010). Moreover, an unconstitutional seizure cannot be justified after the fact

on the basis that, as here, it ultimately uncovered criminal activity. *State v. Lesnick*, 84

Wn.2d 940, 944, 530 P.2d 243 (1975).

An informant's tip provides a law enforcement officer with reasonable suspicion

of criminal activity only if the tip bears "'indicia of reliability'" under the totality of the

circumstances. *Z.U.E.*, 183 Wn.2d at 618; *see Sieler*, 95 Wn.2d at 47. Specifically, there

must either be "(1) circumstances establishing the informant's reliability or (2) some

corroborative observation, usually by the officers, that shows either (a) the presence of

criminal activity or (b) that the informer's information was obtained in a reliable fashion."

*Z.U.E.*, 183 Wn.2d at 618.

I.      INFORMANT'S RELIABILITY BASED ON THE CIRCUMSTANCES ESTABLISHING THE TIP

The reliability of an informant turns on the informant's veracity and the basis of

knowledge underlying the informant's tip. *Morrell*, 16 Wn. App. 2d at 702; *Z.U.E.*, 183

Wn.2d at 619-20; *State v. Hopkins*, 128 Wn. App. 855, 862-63, 117 P.3d 377 (2005). A

law enforcement officer may rely on a tip if it was given by a sufficiently credible

informant or if it was supported by a sufficient factual basis that the informant disclosed

prior to the detention.  *See Hopkins*, 128 Wn. App. at 862-63; *Z.U.E.*, 183 Wn.2d at 620

("[W]e acknowledge that both the 'veracity' and 'factual basis' prongs are helpful to the

reliability inquiry but we decline to adopt a rule whereby each prong is treated as a

necessary element.").

The City argues that Mr. Gilliver was reliable because he called 911, gave his

name, and reported a contemporaneous eyewitness account of Mr. Stearns's behavior.

These facts certainly bolster the reliability of the informant's tip.  In *Navarette v.

California*, the United States Supreme Court held an informant's tip was sufficiently

reliable under the Fourth Amendment to the United States Constitution, indicating that

these very facts support an informant's reliability.  572 U.S. 393, 398-401, 134 S. Ct.

1638, 188 L. Ed. 2d 680 (2014).  Four justices dissented in *Navarette*.  *Id*. at 404

(Scalia, J., dissenting).

The following year, in *Z.U.E.*, the Washington State Supreme Court declined to

endorse either the *Navarette* majority or the dissent as a matter of state constitutional law.

*See Z.U.E.*, 183 Wn.2d at 621 n.4, 625-26 (Gordon McCloud, J., concurring) (arguing

that the *Navarette* dissent is more consistent with article I, section 7 of the Washington

Constitution).  The *Z.U.E.* court acknowledged that an informant's disclosure of their

name, use of the 911 emergency line, and the reporting of a contemporaneous eyewitness

account "tend to bolster the reliability of the tip." *Id*. at 622 (majority opinion).

However, even with the presence of these factors, the *Z.U.E.* court still concluded that the

informant's tip did not "create a sustainable basis for a *Terry* stop." *Id*. at 623.

Like Mr. Gilliver, the informant in *Z.U.E.*, was "a named, but otherwise unknown,

911 caller[ ]." *Id*. at 622. Here, because Officer BrinJones did not know Mr. Gilliver

and had never heard of him prior to being dispatched to the Cascade Motorsports parking

lot, she was unable to recognize him on sight. Because she did not know who the

informant was, Officer BrinJones lacked any knowledge of his veracity or reliability.

*Sieler*, 95 Wn.2d at 48 (holding that the reliability of a named, but otherwise unknown

telephone informant is "not significantly different" from a completely anonymous

informant); *Hopkins*, 128 Wn. App. at 863 (noting that an unknown informant's name is

"meaningless" to officers); *Navarette*, 572 U.S. at 405 (Scalia, J., dissenting) (lamenting

that police "knew nothing about the tipster on whose word . . . they seized" the

defendants, and noting that "the police had no reason to credit" the informant's report).

Indeed, an officer's lack of familiarity with an informant is a fact that generally

"undercut[s] the reliability" of the informant. *State v. Saggers*, 182 Wn. App. 832, 844,

846-47 332 P.3d 1034 (2014) (citing *Navarette* for the proposition that 911 calls are not

per se reliable); *State v. Z.U.E.*, 178 Wn. App. 769, 783-84, 315 P.3d 1158 (2014)

11

(holding that an unknown informant's provision of his name is not sufficient to establish the informant's reliability), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015).  Even if we presume that Mr. Gilliver reported honestly, Officer BrinJones still lacked any knowledge of his general reliability.  *Cf. Z.U.E.*, 183 Wn.2d at 623.

Absent knowledge of an informant's reliability, law enforcement may still develop a reasonable suspicion if the informant's tip "demonstrated a sufficient factual basis to provide reasonable suspicion for the seizure." *State v. Howerton*, 187 Wn. App. 357, 367, 348 P.3d 781 (2015).  However, an informant's "'bare conclusion[s]'" are irrelevant to the analysis because conclusory assertions do not give rise to reasonable suspicion. *Z.U.E.*, 183 Wn.2d at 619 (quoting *Sieler*, 95 Wn.2d at 48).  Instead, the proper inquiry is whether the informant conveyed "objective facts that indicated criminal rather than legal activity." *Howerton*, 187 Wn. App. at 368; *State v. Hart*, 66 Wn. App. 1, 8, 830 P.2d 696 (1992) (noting that, in the absence of corroboration, a tip's reliability is assessed by asking whether the tip "contain[ed] enough objective facts to justify the pursuit and detention of the suspect").  As such, unknown informants must convey objective facts about a suspect's behavior so that officers may "assess . . . the probable accuracy of the [informant]'s conclusion." *Campbell v. Dep't of Licensing*, 31 Wn. App. 833, 836, 644 P.2d 1219 (1982).

12

Here, the record reveals that Mr. Gilliver's tip consisted of two elements: his observation of a man staggering in a parking lot, and his conclusion that the man was intoxicated. Mr. Gilliver's speculation that Mr. Stearns was drunk was a bare conclusion. Such assertions cannot give rise to reasonable suspicion justifying an investigatory detention. *Sieler*, 95 Wn.2d at 48-49; *Lesnick*, 84 Wn.2d at 944; *Howerton*, 187 Wn. App. at 368-69; *State v. Anderson*, 51 Wn. App. 775, 778-79, 755 P.2d 191 (1988). "[A] police officer is not authorized to stop a vehicle on the sole basis that [an informant] announces that it is being driven by a drunk driver." *Campbell*, 31 Wn. App. at 835.

Albeit Mr. Gilliver's tip was conclusionary, it did contain one objective fact—he reported a man staggering in the Cascade Motorsports parking lot just before the man got into a vehicle. Without additional information, the fact that Mr. Stearns staggered to a vehicle is benign. Stated otherwise, staggering, followed by getting into a vehicle and moving it within a parking lot—the only behavior objectively described by Mr. Gilliver— certainly might make a reasonable observer suspicious, but it is not criminal behavior. *See State v. Conner*, 58 Wn. App. 90, 96, 791 P.2d 261 (1990) ("[A] crucial difference . . . is that the [informant] was calling to report a crime, not just some suspicious activity." (Emphasis omitted.)); *see also Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000) (noting that reasonable suspicion "requires that a tip be reliable in its

13

assertion of illegality").  When law enforcement investigates an allegation of criminal

activity based upon an informant's tip, "[t]here must still exist some measure of objective

fact from which the conclusion of criminal conduct can reasonably be derived.  To hold

otherwise would be to expose every citizen's right of privacy against arbitrary invasion by

others to the unfettered exercise of an officer's discretion."  *Campbell*, 31 Wn. App. at

837; *see also State v. Vandover*, 63 Wn. App. 754, 760, 822 P.2d 784 (1992) (explaining

that "potential danger to the public" is not "a substitute for a reliable informant").

Indeed, in this very context, our Supreme Court has concern that even an honest,

reliable informant might "misconstrue[ ] innocent conduct."  *Sieler*, 95 Wn.2d at 48;

*Hart*, 66 Wn. App. at 8 (holding an informant's tip was insufficiently reliable because the

officer "could not assess whether [defendant] was in fact selling marijuana or whether the

informant may have misconstrued innocent conduct").  For her part, Officer BrinJones

recognized that Mr. Gilliver's tip alone did not contain enough objective facts to justify a

seizure:

> [DEFENSE COUNSEL]: Why did you need to observe [Mr.
> Stearns's] driving?
>
> [OFFICER BRINJONES]: Based on [Mr. Gilliver's] description of
> him staggering, I felt that it was my due diligence to observe him and see if
> this man was impaired.

14

RP (Sept. 19, 2019) at 66-67.[4]  Because Officer BrinJones knew nothing about Mr.

Gilliver's credibility and his tip contained an insufficient factual basis to produce a

reasonable suspicion of criminal activity, the circumstances surrounding the tip did not

indicate the tip was reliable.

II.     CORROBORATION

Due to the circumstances surrounding Mr. Gilliver's tip lacking sufficient indicia

of reliability, for Officer BrinJones to possess a reasonable suspicion to stop and seize

Mr. Stearns, she would be required to corroborate the tip.  *Z.U.E.*, 183 Wn.2d at 623;

*Hart*, 66 Wn. App. at 8-9; *Campbell*, 31 Wn. App. at 835.  An officer may sufficiently

corroborate an informant's tip by observing "the presence of criminal activity" or "that

the informer's information was obtained in a reliable fashion."  *Z.U.E.*, 183 Wn.2d at 618.

A. PRESENCE OF CRIMINAL ACTIVITY

Officer BrinJones was not required to rule out all innocent explanations for Mr.

Stearns's conduct.  *Anderson*, 51 Wn. App. at 780.  Nor did she need to witness

---

[4] To be sure, whether a constitutional violation has occurred turns on an objective assessment of the officer's actions, not on the officer's actual state of mind.  *Anderson*, 51 Wn. App. at 780.  Here, Officer BrinJones's testimony merely bolsters the conclusion that the tip, on its own, provided her with insufficient indicia of reliability.  *State v. Lee*, 147 Wn. App. 912, 922, 199 P.3d 445 (2008) (Courts are obliged to consider what officers knew "at the time of the investigatory detention.").

"particularly blatant criminal activity." *Z.U.E.*, 183 Wn.2d at 618. However, confirming

inconsequential details about a suspect is insufficient. Rather, a law enforcement officer

must witness behavior that causes them to reasonably suspect an ongoing or imminent

crime. *Id.* at 618-19, 623; *Hart*, 66 Wn. App. at 8. Officer BrinJones corroborated Mr.

Gilliver's description of Mr. Stearns's appearance and of Mr. Stearns's vehicle, but those

are innocuous facts. *Z.U.E.*, 183 Wn.2d at 623; *Lesnick*, 84 Wn.2d at 943.

The City points to three observations made by Officer BrinJones that purportedly

indicated the presence of criminal activity. Officer BrinJones (1) saw Mr. Stearns's truck

"drift toward[ ] the centerline," (2) believed Mr. Stearns may have been exceeding the

maximum speed limit, and (3) as Mr. Stearns exited a roundabout, believed his truck was

going to strike a curb or cross the centerline, but "at the very last second" the truck

continued straight. RP (Sept. 19, 2019) at 53, 56. We address each contention in turn.

First, due to the distance between them, Officer BrinJones was unable to see

whether Mr. Stearns's truck touched or crossed the centerline. RP (Sept. 19, 2019) at 53.

Assuming Mr. Stearns's vehicle did touch or cross the centerline, a driver's "brief

incursion[ ] over" a lane line "does not justify a belief that the vehicle was operated

unlawfully." *State v. Prado*, 145 Wn. App. 646, 649, 186 P.3d 1186 (2008). Second, the

only means by which Officer BrinJones could detect whether another vehicle was

speeding was by pacing the other vehicle. Officer BrinJones did not pace Mr. Stearns's

vehicle, meaning her belief that he may have been exceeding the posted speed limit was

mere conjecture. An officer's hunch is not reasonable suspicion of criminal activity.

*Doughty*, 170 Wn.2d at 63. Finally, when Mr. Stearns exited the roundabout, Officer

BrinJones did not observe him either strike the curb[5] or cross any lane line. Officer

BrinJones's subjective belief that Mr. Stearns "almost" committed a traffic infraction

does not give rise to an inference of criminality. RP (Sept. 19, 2019) at 65. Under the

totality of the circumstances, Officer BrinJones's observations do not support a

reasonable suspicion that Mr. Stearns was operating a motor vehicle while under the

influence.

B. WHETHER TIP WAS GATHERED IN A RELIABLE FASHION

An informant's tip may also be corroborated by collecting information on whether

the informant gathered the information in a reliable fashion. *See Z.U.E.*, 183 Wn.2d at

618. For instance, in *State v. Lee*, police seized the defendant after a passerby told a

---

[5] Mr. Stearns did strike a curb as he attempted to drive away from Officer BrinJones after initially stopping, but the parties agree this was after he was already seized, so it does not inform the reasonableness inquiry. Ex. A at 0:56 sec. to 1 min., 8 sec. *and* 1 min., 32 sec. to 1 min., 36 sec.

police officer she was frightened because men in a car had approached her, shown her

drug paraphernalia, and asked her to smoke crack cocaine with them.  147 Wn. App. 912,

915, 199 P.3d 445 (2008).  The officer had been patrolling the area and observed the

suspect vehicle approach the woman.  *Id*. at 914-15.  The officer watched as the

occupants of the car spoke briefly with the woman before seeing her walking away,

appearing frightened.  *Id*. at 915.  Division One of this court affirmed the denial of Lee's

suppression motion, reasoning that the officer corroborated the informant's tip because he

had observed the same information she reported.  *Id*. at 922.  By contrast, in *Z.U.E.*, the

Supreme Court noted that "because the officers never contacted any of the [informants],

they were unable to establish whether the tips were obtained in a reliable manner."  183

Wn.2d at 623.

Here, Officer BrinJones did not observe Mr. Gilliver obtain the information he

reported.[6]  Nor did the officer ever make meaningful contact with him.  When Officer

BrinJones arrived at the Cascade Motorsports parking lot, she encountered a man who

---

[6] In addition to direct observation of information gathering, an officer might also corroborate that an informant's tip was gathered in a reliable manner if the tip contained a substantial "amount of specific detail about the commission of the crime."  *Conner*, 58 Wn. App. at 97.  As already explained, Mr. Gilliver did not describe aberrant driving in any detail, merely that he had seen Mr. Stearns stagger, then enter his truck.

pointed at another truck and told her the driver was "wasted." RP (Sept. 19, 2019) at 48.

Officer BrinJones failed to confirm the man's identity. She learned nothing about how

Mr. Gilliver arrived at his conclusion that Mr. Stearns was drunk. Officer BrinJones

began pursuing Mr. Stearns's truck without any further conversation. Thus, it appears she

simply assumed this unknown man was telling the truth. *See Hopkins*, 128 Wn. App. at

863 (noting that the officer should not have simply assumed the informant was truthful);

*see also Campbell*, 31 Wn. App. at 835. Officer BrinJones confirmed Mr. Stearns's

appearance matched Mr. Gilliver's description, but corroboration of such innocuous

details is of little value. *See Sieler*, 95 Wn.2d at 49-50. It was unbeknownst to Officer

BrinJones how Mr. Gilliver obtained the information he reported to 911.

Lastly, the City argues that Officer BrinJones should be afforded latitude because

Mr. Gilliver's tip indicated a serious crime—driving under the influence—which

seriously endangers the public.[7] The City presumes Officer BrinJones may have sought

---

[7] The City also contends the superior court failed to engage in a thorough enough analysis. The explanations offered by the superior court in its oral ruling and written order were admittedly minimal. However, the City has pointed to no authority requiring a detailed analysis on the record in this context. Rather, when exercising appellate review, superior courts are simply obliged to "state[ ]" "reasons for the decision." RALJ 9.1(g); *Elliott Bay Adjustment Co. v. Dacumos*, 200 Wn. App. 208, 215, 401 P.3d 473 (2017) ("The superior court gave written reasons for its decision as required.").

to obtain additional information in advance of pursuing Mr. Stearns if the situation did

not appear exigent when she arrived at the parking lot. *See Z.U.E.*, 183 Wn.2d at 623

("[W]hen a tip involves a serious crime or potential danger, less reliability may be

required.").

"[T]he seriousness of the suspected criminal conduct" is certainly "a relevant

consideration." *Campbell*, 31 Wn. App. at 837. But even where a reported crime is

serious, "there must still exist some measure of objective fact" that supports a conclusion

of criminality. *Id.*; *see Vandover*, 63 Wn. App. at 760; *see also Navarette*, 572 U.S. at

414 (Scalia, J., dissenting) ("Drunken driving is a serious matter, but so is the loss of our

freedom to come and go as we please without police interference."). Here, the objective

facts Officer BrinJones possessed were that Mr. Gilliver saw Mr. Stearns stagger and, that

after the officer followed his vehicle for a distance, witnessed Mr. Stearns comply with

the rules of the road (i.e. RCW 46.61 et seq.). The City's introduction of the word

"exigency" does not bolster these inconsequential facts. "Allowing investigatory

detention and questioning upon such an insubstantial basis is plainly contrary" to the

commands of our constitution. *Sieler*, 95 Wn.2d at 51.

No. 38981-2-III
*City of Wenatchee v. Stearns*

CONCLUSION

The circumstances surrounding Mr. Gilliver's tip to law enforcement lacked any indicia of reliability. Officer BrinJones was unable to corroborate Mr. Gilliver's tip through her own observations. Likewise, she was unaware of how Mr. Gilliver obtained the information he had conveyed to law enforcement. Accordingly, Officer BrinJones lacked reasonable suspicion of criminal activity sufficient to seize Mr. Stearns. We affirm the superior court's order reversing the district court's denial of Mr. Stearns's suppression motion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

<u>Cooney</u>
Cooney, J.

I CONCUR:

<u>Fearing, J.</u>
Fearing, C.J.

21

No. 38981-2-III

STAAB, J. (dissenting) — I respectfully dissent. Contrary to the majority's opinion, I would find that under the "totality of the circumstances," the tip provided by an identified but unknown citizen informant that Frank Stearns was seen staggering to his vehicle and driving a short distance, was sufficiently reliable and contained enough information to provide reasonable suspicion for police to temporarily detain Stearns and investigate him for driving under the influence.

The general rule in Washington is that police cannot base a *Terry*[1] stop on an informant's tip unless the report contains "indicia of reliability." *State v. Z.U.E.* 183 Wn.2d 610, 618, 352 P.3d 796 (2015). Reliability can be established either through some type of corroboration or "circumstances establishing the informant's reliability." *Id.* I agree with the majority that police were unable to corroborate the citizen's report in this case. Therefore, we must determine if the citizen's report contained indicia of reliability and provided enough information to justify the stop.

Factors that determine an informant's reliability include circumstances demonstrating the informant's veracity and basis of knowledge. *Id.* at 620-21. In other

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

words, there must be enough information for police to reasonably believe that the caller is

credible and the tip is reliable. When considering whether an informant's report provides

reasonable suspicion, courts should consider these factors under a totality of the

circumstances approach.[2] *Id*. While both factors are helpful, it is not necessary that each

factor be established. *Id*. at 620. Instead, a deficiency in one factor "may be

compensated for, in determining the overall reliability of a tip, by a strong showing as to

the other, or by some other indicia of reliability." *Illinois v. Gates*, 462 U.S. 213, 233,

103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

However, even under this balancing approach, "bare assertions of criminal activity

from essentially anonymous informants" lack reliability altogether. *Z.U.E.*, 183 Wn.2d at

621 *(*characterizing the holdings in *State v. Sieler*, 95 Wn.2d 43, 621 P.2d 1272 (1980)

---

[2] In *Gates*, the United States Supreme Court abandoned the *Aquilar/Spinelli* test
for deciding whether an informant's tip provides probable cause and instead adopted a
totality of the circumstances approach. *Illinois v. Gates*, 462 U.S. 213, 230-32, 103 S. Ct.
2317, 76 L. Ed. 2d 527 (1983); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed.
2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637
(1969). Washington's Supreme Court rejected this totality of the circumstances approach
for deciding probable cause, holding that it fails to meet the more stringent requirements
of our state constitution under article I, section 7, and continues to apply the
*Aguilar/Spinelli* approach. *See State v. Jackson*, 102 Wn.2d 432, 439-40, 688 P.2d 136
(1984); *Z.U.E.*, 183 Wn.2d at 616 n.2. However, in *Z.U.E.*, our supreme court did adopt
the totality of the circumstances standard for determining if an informant's tip provided
reasonable suspicion. *Id.* at 621. Even so, the court suggested that our state constitution
may require a stronger showing of reasonable suspicion than would suffice under the
Fourth Amendment to the United States Constitution. *Id.* at n.4.

and *State v. Lesnick*, 84 Wn.2d 940, 530 P.2d 243 (1975)). Likewise, even when the

information is known to be reliable, a conclusory tip of criminal activity generally does

not justify an investigatory detention. *Sieler*, 95 Wn.2d at 48. The more information

tending to show that the informant can be trusted and the information is accurate, the

more reliable the tip. Ultimately, we review a warrantless stop precipitated by an

informant's tip to determine the reasonableness of the suspicion based on the totality of

the circumstances. *Id*. at 47-48.

The veracity of the informant, or whether an informant can be trusted, depends in

part on whether and to what extent the informant is known. A citizen informant is

presumed to be reliable, but an anonymous informant is not granted this presumption.

*State v. Wakeley*, 29 Wn. App. 238, 241, 628 P.2d 835 (1981). An anonymous informant

is not considered reliable because they cannot be questioned about their basis of

knowledge or motive for providing the information, cannot be held accountable for

providing an inaccurate or false statement, and the informant's reputation for providing

accurate information cannot be assessed. *United States v. Rowland*, 464 F.3d 899, 907-

08 (9th Cir. 2006); *United States v. Morales*, 252 F.3d 1070, 1074 (9th Cir. 2001).

While an identified caller may be somewhat more reliable, if the identified caller

is otherwise unknown, police are still not able to assess the informant's reputation for

reliability and a telephone informant could just as easily provide an alias or fake name.

*See Sieler*, 95 Wn.2d at 48. Still, cell phone calls to 911 (which can be traced), from a

citizen who identifies themselves, do provide some safeguards against false reports.[3] *See*

*Z.U.E.*, 183 Wn.2d at 621-22; *Navarette v. California*, 572 U.S. 393, 400, 134 S. Ct.

1683, 188 L. Ed. 2d 680 (2014).

In this case, the majority determines that the veracity of the informant cannot be

established. In support, the majority incorrectly suggests that similar circumstances were

found lacking in *Z.U.E. See* majority at 11. In *Z.U.E.*, the identified though unknown

informant called 911 to report that she was witnessing events as they unfolded. 183

Wn.2d at 614. Under these circumstances, the court in *Z.U.E.* found that the "officers

had little reason to doubt the veracity of Dawn, the 911 caller." *Id.* at 622. Likewise, in

this case, the identified but unknown citizen informant called 911 to report that he was

witnessing events as they unfolded. These circumstances are sufficient to provide police

with reason to believe that the caller was credible.

---

[3] In *Sieler*, the court held that "[t]he reliability of an anonymous telephone informant is not significantly different from the reliability of a named but unknown telephone informant. Such an informant could easily fabricate an alias, and thereby remain, like an anonymous informant, unidentifiable." 95 Wn.2d at 48. *Sieler* was decided in 1980 when telephone technology was much more primitive than it is today. In *Navarette*, the United States Supreme Court recognized that more current technology allowed 911 dispatchers to determine the identity and geographic location of a cell phone caller. *Navarette v. California*, 572 U.S. 393, 400-01, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014). In *Z.U.E.*, our State Supreme Court noted the traceability of 911 calls from a cell phone, but because they determined that the caller was otherwise credible, the Court did not consider whether the holding in *Sieler* should be re-examined. 183 Wn.2d at 621.

The problem in *Z.U.E.* was not with the caller's veracity, but with the lack of information to show the caller's basis of knowledge. 183 Wn.2d at 622-23. Basis of knowledge helps police determine if the report is accurate. "Some underlying factual justification for the informant's conclusion must be revealed so that an assessment of the probable accuracy of the informant's conclusion can be made." *Sieler*, 95 Wn.2d at 48. "This additional requirement helps prevent investigatory detentions made on the basis of a tip provided by an honest informant who misconstrued innocent conduct." *Id*.

Circumstances indicating that an informant's knowledge was based on witnessing the criminal activity "lends significant support to the tip's reliability." *Navarette*, 572 U.S. at 399; *See Z.U.E.*, 183 Wn.2d at 622. Similarly, a report made contemporaneously to the crime unfolding is generally considered more reliable. *Navarette*, 572 U.S. at 399; *Z.U.E.*, 183 Wn.2d at 622.

On the other hand, even an eyewitness report of criminal activity is insufficient if police cannot determine the accuracy of the informant's opinions. *Campbell v. Dep't of Licensing*, 31 Wn. App. 833, 835-36, 644 P.2d 1219 (1982). Thus, when a passing motorist tells police that there is a "drunk driver" headed in the other direction from the police, this fails to provide sufficient information for police to determine how the motorist knows the other driver is drunk. *Id*. at 836.

In *Z.U.E.*, an identified informant alleged that a 17-year-old female was in possession of a gun. If the tip was accurate, then it was sufficient to report the crime of a

5

minor in possession of a handgun. The age of the suspect was the only fact making

possession of the gun a crime. Recognizing that it would be difficult for a stranger to tell

the difference between a 17-year-old and an 18-year-old, the majority in *Z.U.E.* held that

the tip was insufficient because there was nothing indicating the caller's basis for

knowing that the suspect was 17 years old. *Z.U.E.*, 183 Wn.2d at 622-23. Thus, officers

could not evaluate the accuracy of the caller's report. *Id.*

In this case, the information provided was sufficient to provide reason to believe

that the caller's opinion that Stearns was intoxicated was accurate. The caller indicated

that he witnessed the events and suggested that the events were occurring

contemporaneously to the call. In addition, the caller provided a basis for his knowledge:

his observation of Stearns staggering through the parking lot. This is enough for police to

believe that the caller is credible and the report is accurate.

The final issue is whether the information provided was sufficient to provide

reasonable suspicion for the stop. "Even a reliable tip will justify an investigative stop

only if it creates reasonable suspicion that 'criminal activity may be afoot.'" *Navarett*,

572 U.S. at 401 (quoting *Terry*, 392 U.S. at 30). "'[R]eliability by itself generally does

not justify an investigatory detention.'" *Z.U.E.*, 183 Wn.2d at 619 (alteration in original)

(quoting *Sieler*, 95 Wn.2d at 48).

Reports by informants, especially those made to 911, often lack details and instead

tend to provide more conclusory allegations of criminal activity that are insufficient to

provide reasonable suspicion of a crime. Thus, a named informant reporting a "drug sale" in a school parking lot, was insufficient to provide reasonable suspicion. *Sieler*, 95 Wn.2d at 44.

In contrast to conclusory reports found insufficient, the report in this case was enough to provide reasonable suspicion to temporarily detain Stearns. The reliable informant reported that he was observing a man "staggering" to his vehicle and driving, and the informants believed the person was intoxicated. While this allegation is not verbose, it is sufficiently descriptive. To "stagger" is "to have difficulty in remaining erect **:** reel from side to side **:** stand or walk unsteadily." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2220 (1993). Staggering or difficulty walking has long been considered evidence of intoxication. If police were to witness a person staggering across a parking lot and get into a car, it would be reasonable for them to suspect the person was intoxicated and detain the person to confirm or disprove their concerns.

While intoxication may not be the only reason a person staggers, it is undeniably a reason for a person to stagger. The critical inquiry is whether it is reasonable to suspect that a person staggering across a parking lot is intoxicated. Reasonable suspicion is less than a preponderance of the evidence and "obviously less" than the probable cause standard. *Navarette*, 572 U.S. at 397.

The majority also gives weight to Officer Brin Jones' own conclusion that she needed to corroborate the tip. This factor is irrelevant to our analysis. Officers

frequently attempt to obtain more evidence to ensure the legality of a stop, but the

officer's subjective beliefs on whether a particular standard is met are irrelevant. *See*

*Z.U.E.*, 183 Wn.2d at 626 (Gordon McCloud, J., concurring) ("whether there is

*reasonable* suspicion to stop a suspect is an objective inquiry, not a subjective one.").

In the end, given the lower standard of reasonable suspicion, and our review under

the totality of the circumstances, I would hold that the tip by an identified but unknown

citizen informant was sufficiently reliable and sufficiently detailed to provide Officer

Brin Jones with reasonable suspicion to stop Stearns and investigate him for driving

under the influence.

_____
Staab, J.